**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

QARWASH MOHSN AWAD,

        Plaintiff,

    vs.                            Civil No. 15-cv-06146

JOHN F. KERRY, Secretary of the          Honorable Gary Feinerman
United States Department of State, *et al*.,

        Defendants.


**DEFENDANTS' MEMORANDUM OF LAW
SUPPORTING SUMMARY JUDGMENT**

**I.  INTRODUCTION**

      This is a matter in which Plaintiff challenges, under the Administrative Procedure Act

("APA"), the United States Department of State's revocation of his United States passport.

Under the deferential APA standard, this Court should uphold the State Department's decision to

revoke Plaintiff's passport after it discovered—through Plaintiff's sister's sworn, written

admission, and after its own investigation—that Plaintiff used a fake identity to obtain his

passport.

      Not one of Plaintiff's challenges to the State Department's revocation decision holds

water.  First, despite Plaintiff's claim to the contrary, the State Department had the clear statutory

authority to revoke Plaintiff's passport on fraud grounds under 8 U.S.C. § 1504(a).  Second,

there is no "anti-Yemeni" standard applied at the State Department, and there is nothing in the

record that suggests otherwise.  Third, Defendants did not violate Plaintiff's constitutional rights

by not relying on the "clear and convincing" standard when making its revocation decision,

which in no way amounts to a collateral attack on Plaintiff's citizenship status.  Finally, Plaintiff

lacks standing to challenge the State Department's hearing process because he did not avail himself of a hearing. Because the State Department did not act arbitrarily or capriciously when it refused to allow Plaintiff to retain a United States passport that he obtained through identity fraud, this Court should grant summary judgment in Defendants' favor.

## II.  RELEVANT FACTS AND PROCEDURAL HISTORY

For all facts relevant to this motion, Defendants respectfully refer the Court to the Statement of Undisputed Material Facts filed contemporaneously with this brief.

## III.  STANDARDS OF REVIEW

Under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 701 *et seq*., a court reviewing an administrative agency's decision may set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Abraham Lincoln Memorial Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012).  The APA provides that a "court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  The scope of review is limited to the facts established in the administrative record before the agency at the time the decision was made.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Findings at the administrative level must be supported by substantial evidence on the record, defined as that which "a reasonable person would deem adequate to support the ultimate conclusion."  *Michael v. F.D.I.C.*, 687 F.3d 337, 348 (7th Cir. 2012) (citing *Grubb v. F.D.I.C.*, 34 F.3d 956, 961 (10th Cir. 1994)).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It is more than a scintilla but

less than a preponderance." *Marion Cnty. Coroner's Office v. EEOC*, 612 F.3d 924, 929 (7th Cir. 2010) (internal citations and quotations omitted).

The Department has promulgated regulations consistent with this statutory authority for passport revocations in "Subpart E—Denial, Revocation, and Restriction of Passports" (22 C.F.R. §§ 51.60–66) and "Subpart F—Procedures for Review of Certain Denials and Revocations" (22 C.F.R. §§ 51.70–74). The grounds for revocation or limitation of passports appear in 22 C.F.R. § 51.62. Among other grounds, 22 C.F.R. § 51.62(a)(2) permits the Department to revoke or limit a passport where, "[t]he passport has been obtained illegally, fraudulently or erroneously; was created through illegality or fraud practiced upon the Department; or has been fraudulently altered or misused." This regulation implemented § 1504 and was announced in a Final Rule dated April 22, 1999. *See* 64 F.R. 19713-01, 1999 WL 229818.

## IV. ANALYSIS

### A. Defendants did not exceed their statutory authority under 8 U.S.C. § 1504.

As a threshold matter, Plaintiff's assertions that the State Department lacked the proper authority to revoke his passport and that the revocation somehow affects his citizenship status are unavailing.

The Immigration and Nationality Act ("INA") defines a United Sates passport, in part, as an identity document. *See* 8 U.S.C. §1101(a)(30). In applying for his passport, Plaintiff was required to fill out the application form completely and truthfully and list his parents' true names, as well as any prior names he had used. Section 1504(a), which was enacted in 1994, provides that "the Secretary of State is authorized to cancel any United States passport or Consular Report of Birth, or certified copy thereof, if it appears that such document was illegally, fraudulently, or

erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary[.]" *See also* 22 C.F.R. § 51.62(a)(2). Thus, Plaintiff's suggestion that Defendants lacked the authority to revoke his passport is a nonstarter. (ECF No. 15, Plaintiff's Amended Complaint ("Am. Compl.") at ¶ 56).

Plaintiff argues that his presentation of a judicial certificate of citizenship is binding with respect to the rights and benefits of citizenship and should somehow shield a citizen against passport revocation.[1] (Am. Compl. at ¶¶ 56, 57.) However, as the record shows, Plaintiff never presented the certificate of citizenship to the Department of State as a part of his passport applications; thus, it is outside the scope of this Court's review.[2] Even if he had submitted one, the Department is not legally obligated to accept the name on a citizenship certificate at face value when presented with credible evidence of identity fraud. Had Congress intended for this to be the case, it would have written the exception into section 1504(a).

The State Department's actions also do not constitute "an impermissible collateral attack on a judicial certificate of citizenship." (Am. Compl. at ¶ 56.) When the Department revokes a passport, it only deprives the individual of one document evidencing *proof* of United States

---

[1] Throughout his complaint, Plaintiff alludes to his naturalization certificate and the effect passport revocation has on naturalized citizens. (Am. Compl. at ¶¶ 5, 21, 22, 24, 32-34, 57, 65.) However, Plaintiff did *not* become a citizen through the naturalization process; instead, he derived his citizenship from his father. (Certified Administrative Record ("CAR") at 14.) Thus, he lacks standing to challenge any consequences revocation may have on his naturalization or that of other naturalized citizens. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted) (under Article III of the Constitution, a plaintiff must allege an injury-in-fact; that is, "an invasion of a legally protected interest which is . . . concrete and particularized."); *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (internal quotations omitted) ("injury-in-fact" requires the claimant to demonstrate that he is in immediate danger of sustaining injury).

[2] The State Department issued Plaintiff his original passport in 2002 based on Plaintiff's claim that he derived his citizenship through his father. (CAR at 14.) Yet, there is no record that he submitted a certificate of citizenship in 2002, and he was not required to. *See* 22 C.F.R. § 51.43(b)(2). Plaintiff submitted no supporing documentation with is 2011 passport application other than his 2002 passport.

citizenship; it does not deprive the individual of citizenship itself.  *See Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 1, 4 (D.D.C. 1998) ("[T]he Court believes that "§ 1504 embodies the basic and well-recognized principle that passport revocations do not necessarily impugn the citizenship status of passport holders."); *Atem v. Ashcroft*, 312 F. Supp. 2d 792, 801 (E.D. Va. 2004).  The last sentence in § 1504(a) confirms this by stating, "[t]he cancellation under this section of any document purporting to show the citizenship status of the person to whom it was issued shall affect only the document and *not the citizenship status* of the person in whose name the document was issued."  Thus, Plaintiff's citizenship remains intact.

   **B.     The State Department's revocation decision based on Plaintiff's fraud was neither arbitrary nor capricious and is supported by the record evidence.**

   The evidence upon which the State Department based its revocation decision was Plaintiff's sister's written, sworn statement from September 8, 2012, which is inconsistent with Plaintiff's 2011 United States passport renewal application that he signed under penalty of perjury.  (CAR at 7-8, 4-6.)  Plaintiff's sister's statement is inherently reliable as it contains a level of detail that the investigator could not have fabricated, and it does not serve her interests. The statement itself notes that it was provided voluntarily and was translated into Arabic.  (CAR at 7.)  The State Department properly used the statement to determine that Plaintiff made false statements of material fact in his 2011 passport application because (1) his true identity is Qarwash Attaf Saleh Kurwash, not "Qarwash Mohsn Awad," as he listed; (2) his father's true name is Attaf Saleh Kurwash, not "Mohsn Saleh" (as Plaintiff listed in 2011 passport renewal application) or "Mohsen Saleh Awad" (as he listed in his 2002 passport application); and (3) he left blank the section asking him to "List all other names you have used."  (CAR at 4, 6-7, 14, 15.)  The State Department also explained its finding of fraud in its thorough report of investigation.  (CAR at 9-13.)

Plaintiff had the opportunity to "testify, offer evidence in his . . . own behalf, present witnesses, and make arguments" before the agency pursuant to 22 C.F.R. § 51.71(c). Although the State Department informed Plaintiff of this (CAR at 15), he declined to avail himself of the opportunity to refute the State Department's finding. Now, for the first time, Plaintiff alleges that when his sister provided the statement evidencing his identity fraud, she did so under duress "inflicted by the Defendants." (Am. Comp. at ¶ 59.) Plaintiff's bald assertion finds no support in the administrative record; his sister's statement is clear and concise and there is no suggestion that she did not provide it voluntarily. (CAR at 7-8.) The State Department's finding of fraud in its Report of Investigation bolsters the strength of the agency's finding. (*Id*. at 9-12.)

**C.     Plaintiff lacks standing to challenge the Department's hearing procedures.**

Having never received a revocation hearing, Plaintiff lacks standing to bring any claims regarding the State Department's passport hearing process. Under Article III of the U.S. Constitution, § 2, a party invoking federal jurisdiction must show: (1) an injury in fact, which is an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). To the extent Plaintiff challenges the adequacy of the passport revocation hearing procedure (Am. Compl. at ¶¶ 19-20), he lacks standing to do so because he did not request or receive a hearing. *See id.*; *Wisconsin Right to Life, Inc.*, 366 F.3d at 489.

**D.     The State Department does not apply an "anti-Yemeni" standard and there is no record evidence to suggest it does.**

The administrative record also contains no evidence that "Defendants' [sic] improperly reviewed the evidence of identity in this matter with impermissible bias, applying an 'anti-

Yemini' standard unlike that provided other naturalized U.S. citizens." (Am. Compl. at ¶ 65.) The State Department denies that it discriminates based on national origin in the passport revocation context and the administrative record contains no evidence that any such discrimination occurred here. Contrary to Plaintiff's baseless assertion that "[c]onsular officials use often vague accusations of fraud as excuses to illegally seize Yemeni-Americans' passports" (Am. Compl. at ¶ 29), the record demonstrates clear and unambiguous evidence of identity fraud. Because Plaintiff cannot support his claim of an unconstitutional bias with any shred of record evidence, this Court should reject it.[3] *See Michael*, 687 F.3d at 348.

Even if Plaintiff could show that United States passport holders of Yemini origin were treated dissimilarly (which he cannot), he has not pled that such treatment resulted from intentional discrimination, as an equal protection claim requires. *See Samaad v. Dallas*, 940 F.2d 925, 941 (5th Cir. 1991); *Antonishin v. Keisler*, 2007 WL 2788841, at *9-10 (N.D. Ill. Sept. 20, 2007) (dismissing equal protection claim where plaintiffs had not "alleged that defendants have purposefully favored one class of applicants over another."). Consequently, his equal protection claim must fail.

---

[3] It is unclear whether Plaintiff seeks relief related to the alleged incident on June 8, 2015 on an airplane at Chicago O'Hare International Airport. (Am. Compl. 47-48.) Assuming *arguendo* that he does, the alleged events would fall outside of the parameters of the final agency action at issue in this APA case: the State Department's May 11, 2015 passport revocation, which occurred before the alleged plane incident. *See Citizens to Preserve Overton Park*, 401 at 420 (the scope of review is limited to the administrative record before the agency at the time the decision was made); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). Further, these allegations would concern actions by the unnamed airline and the Department of Homeland Security, not the Statement. Thus, Plaintiff would need to raise any claim related to the alleged airplane incident in a separate legal action against the appropriate parties.

**E.** **The Department did not violate the Fifth Amendment's Due Process Clause because it used the proper "preponderance of the evidence" standard, not the incorrect "clear and convincing" evidence standard.**

Despite Plaintiff's claim to the contrary (Am. Compl. at ¶¶ 64-67, Prayer for Relief at ¶ 3), the proper standard of proof in upholding a passport revocation is the preponderance of the evidence standard. The government is aware of no prior court decision that has held the State Department to a clear and convincing standard for passport revocations. The requisite degree of proof in civil cases generally is a preponderance of the evidence, but proof by clear and convincing evidence is required in civil cases involving deprivations of particularly important individual interests or rights not rising to the level of criminal prosecutions. *See, e.g.*, *Santosky v. Kramer*, 455 U.S. 745 (1982) (termination of parental rights); *Addington v. Texas*, 441 U.S. 418 (1979) (commitment to a mental hospital); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization).

In *Addington v. Texas*, the Supreme Court held that a court will determine the requisite standard of proof by allocating the risk of error between the litigants based on the relative importance attached to the interests at stake in the litigation." *Id*. at 423. Applying the "risk of error" balancing test to passport revocations requires an assessment of the individual's interest in international travel in comparison to the government's interest in the passport revocation.

### 1. The individual's interest in international travel is limited.

The revocation of a passport obviously inhibits an individual's ability to travel abroad. However, the Supreme Court observed that there are crucial differences between the right to interstate travel, which is "virtually unqualified," and a citizen's interest in foreign travel, which is "no more than an aspect of the 'liberty' protected by the Due Process Clause." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978); *see also Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002).

The Court held that "legislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel." *Califano*, 439 U.S. at 176–77.

The Supreme Court issued its seminal decision regarding foreign travel in *Haig v. Agee*, 453 U.S. 280 (1981). In *Agee*, the Court held that the Secretary of State could revoke former-CIA agent Philip Agee's passport on the grounds that his efforts to expose intelligence agents posed a threat to national security. *Id.* at 282. Nonetheless, "[t]he freedom to travel abroad . . . is subordinate to national security and foreign policy considerations; as such, it is subject to reasonable government regulation." *Id.* at 306. As such, this right "can be regulated within the bounds of due process." *Id.* at 307 (internal quotation marks and citations omitted).

An individual's interest in international travel does not approach that of freedom from termination of parental rights, civil commitment, deportation, or denaturalization—all scenarios in which the clear and convincing standard has been held to apply. In each of those situations, the individual may be subject to a prolonged, and at times permanent, change to his or her status. *See Santosky*, 455 U.S. at 747 (describing a parent's "fundamental" interest in parental rights and noting the "vital interest in preventing the irretrievable destruction of their family life"); *Addington*, 441 U.S. at 426 (noting stigma from civil commitment can have a significant impact on individuals, and the individuals' interest in the outcome of a proceeding is of such weight and gravity that no lesser standard could apply); *Woodby v. INS*, 385 U.S. 276, 285 (1966) (noting potential "banishment" resulting from deportation, and the "drastic deprivations that may follow" when an individual must "forsake all bonds formed here"); *Schneiderman v. United States*, 320 U.S. 118, 122 (1943) (noting it would be "difficult to exaggerate the value and importance of U.S. citizenship," which should not be taken away without "the clearest sort of justification and

proof"); *Nishikawa v. Dulles*, 356 U.S. 129, 134 (1958) (applying a clear and convincing standard to a challenge to a loss of nationality determination "because the consequences of denationalization are so drastic"); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) ("in view of the grave consequences to the citizen, naturalization decrees are not lightly to be set aside.").  By contrast, the revocation of a passport does not undermine an individual's underlying citizenship (*see supra* at IV.A.) and an applicant may reapply with evidence sufficient to overcome whatever deficiencies resulted in the revocation.  Moreover, a passport revocation does not automatically result in the cancellation of other documents regarding citizenship, such as a certificate of citizenship.  Notably, Congress did not require a pre-revocation hearing in 8 U.S.C. §1504, suggesting that lesser protection is afforded in this context.  In addition, 22 CFR §51.62(a)(2) specifically permits the Department to "limit" a passport when it was, *inter alia*, "obtained illegally, fraudulently or erroneously."  The State Department also revokes passports for other reasons, including active felony warrants, indivudals in arrears for child support, or subject to a request for extradition.  *See* 22 U.S.C. § 51.60 and 51.62(a).  Finally, an individual's interest in international travel should not be conflated with his ability to return to the United States from abroad; even where the Department is required to deny or revoke a passport, it is permitted to issue a passport for direct return to the United States.  *See* 22 CFR § 51.60(a) ("The Department may not issue a passport, except a passport for direct return to the United States" under circumstances where denial is mandatory); 22 CFR § 51.62(a)(1).

### 2.  The Government must protect the public interest.

The government, meanwhile, has a public interest in protecting the passport system against fraudulent conduct.  Circumstances clearly exist where it would be contrary to the public interest for the government to issue or allow an individual to continue to hold a passport.  Indeed,

the Supreme Court has recognized that "[a]s a travel control document, a passport is both proof of identity and proof of allegiance to the United States. Even under a travel control statute, however, a passport remains in a sense a document by which the government vouches for the bearer and for his conduct." *Agee*, 453 U.S. at 293. Accordingly, Congress has passed legislation and the State Department has promulgated regulations permitting revocation in various circumstances, including those where an individual has committed certain unlawful, wrongful, or harmful acts. The government has a strong and legitimate interest in preventing individuals who have committed such actions from fleeing the country or traveling between countries. *Cf. In re Grand Jury Subpoena Duces Tecum (Passports) Dated June 8, 1982*, 544 F. Supp. 721, 726 (S.D. Fl. 1982) (describing the "strong Government interest" that arises from the "unique function of a passport"). The Supreme Court has acknowledged this broad category, stating that the Secretary has historically exercised his discretion to refuse passports with respect to "the question whether the applicant was participating in illegal conduct, trying to escape the toils of the law, promoting passport frauds, or otherwise engaging in conduct which would violate the laws of the United States." *Kent*, 357 U.S. at 127.

### 3. Interests of the individual must be balanced with those of the government.

In balancing the individual's and government's interests in the present case, it is clear that both interests are significant. Therefore, neither party should be asked to bear a disproportionate risk of error in determining the standard of proof. For these reasons, the proper standard of proof for the passport revocation process—and indeed, the standard that was applied in the Plaintiff's case—is preponderance of the evidence.[4]

---

[4] In civil actions filed under 8 U.S.C. §1503(a), when an individual has been denied a right or privilege on the grounds that he is not a national, the burden of proof that is applied is a preponderance of evidence. *See* 8 U.S.C. § 1503(a); 28 U.S.C. § 2201.

Although a citizen's interest in international travel is an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment, it is not unqualified and does not rise to the level of a liberty interest that would require application of a heightened "clear and convincing evidence" standard. Accordingly, the proper standard of proof for the passport revocation process—and indeed, the standard that was applied in the Plaintiff's case—is the preponderance of the evidence standard. Under the APA, if Congress has not spoken to the issue, the question for the Court is whether the agency's action is based on a permissible construction of the statute. *See Ctr. for Bio. Diversity v. Natl. Hwy Traffic Safety Admin.*, 538 F.3d 1172, 1193-94 (9th Cir. 2008). Accordingly, the Court should decline Plaintiff's invitation to use the "clear and convincing evidence" standard.

**4.  The correct standard of proof was applied and met in this case.**

It was proper for the State Department to apply the preponderance of evidence standard in revoking Plaintiff's United States passport. Even if the record does not explicitly state what standard of proof is required in the passport revocation process or what the State Department applied, the Department's Foreign Affairs Manual ("FAM") provides that the applicable burden is preponderance of the evidence, borne by the applicant. 7 FAM 1313(b), *available at* http://www.state.gov/documents/organization/86773.pdf. It therefore logically follows that the State Department bears the burden in revoking a bearer's passport, and that the same standard should apply. There is a presumption of regularity in government officials' performance of their duties, including that the State Department applied the preponderance of evidence standard in revoking Plaintiff's passport. *See Citizens to Preserve Overton Park*, 401 U.S. at 415. Deference is owed to an agency's interpretation of its own regulation unless the interpretation is plainly erroneous or inconsistent with regulation. *See League of Wilderness Defenders v.*

*Forsgren*, 309 F.3d 1181, 1183 (9th Cir. 2002). As discussed *supra* at Section IV.E., substantial evidence supports the State Department's revocation decision. Finally, even if Defendants bear the burden and the proper standard of proof is "clear and convincing," Defendants met this standard in this case. Plaintiff's sister's sworn statement and the State Department's investigation provide compelling evidence supporting the State Department's revocation determination. (CAR at 7-13.)

## V. CONCLUSION

The State Department's revocation decision was neither arbitrary nor capricious and each of Plaintiff's legal and constitutional challenges is wholly unavailing. Thus, this Court should grant Defendants' motion and grant summary judgment in their favor.


Dated: January 15, 2016     BENJAMIN C. MIZER
               Principal Acting Assistant Attorney General

               WILLIAM C. PEACHEY
               Director
               Office of Immigration Litigation
               District Court Section

               COLIN A. KISOR
               Deputy Director

               s/ Stacey I. Young
               STACEY I. YOUNG
               Senior Litigation Counsel
               U.S. Department of Justice, Civil Division
               Office of Immigration Litigation
               District Court Section
               P.O. Box 868, Ben Franklin Station
               Washington, DC 2004
               Phone: (202) 305-7171
               Facsimile: (202) 305-7000
               Email: stacey.young@usdoj.gov

               *Attorneys for Defendants*