UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QARWASH MOHSN AWAD, | )<br>) |
| Plaintiff, | )<br>) |
| V. | ) Case No.: 1:15-cv-06146<br>) |
| John Kerry, et al. | ) Honorable Gary Feinerman<br>) |
| Defendants. | )<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY JUDGMENT**

Plaintiff, by and through his attorney, June J. Htun, hereby opposes the Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and herewith submits his MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

**I.   INTRODUCTION**

The Defendants in this matter are seeking summary judgment and bear the burden of establishing that there are no genuine disputes concerning material facts and that they are entitled to judgment as a matter of law. The Defendants have admitted that this Court retains jurisdiction over the decision to revoke the Plaintiff's passport. However, there are material facts in dispute in this case and the Defendants have not established that they are entitled to judgment as a matter of law. Plaintiff's action seeks relief under the APA, the U.S. Constitution and injunctive remedies. Because Plaintiff's action falls within and without the purview of the APA two standards of review are in play expanding the factual record beyond the administrative record.

1

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

For all facts relevant to this motion, Plaintiff respectfully refer the Court to Plaintiff's Statement of Additional Facts and the Defendants' Statement of Undisputed Material Facts filed contemporaneously with this brief.

## III. STANDARDS OF REVIEW

When a party seeks summary judgment, all facts and reasonable inferences must be construed in favor of the nonmoving party. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir.2005). Courts do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, they determine whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law*." Magin*, 420 F.3d at 686 (citing Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the nonmoving party's case*." Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To overcome a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. Summary Judgment Standard (APA)

This case involves a challenge to a final agency action under the Administrative Procedure Act ("APA") that the parties agree involves judicial review of the Certified Administration Record of Proceedings ("ROP"). See 11. "Judicial review of an agency's final determination follows standards quite different from those applied in a typical summary judgment proceeding." J.N. Moser Trucking, Inc. v. U.S. Dept. of Labor, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004). 5 U.S.C. § 706 "sets out the standards that courts must follow when reviewing federal agency action unless another statute clearly requires otherwise." Id. (citing Dickinson v. Zurko, 527 U.S. 150, 154-55 (1999)). When reviewing an agency action under the APA, the Court's review is limited to the administrative record on which the agency based its decision. See 5 U.S.C. § 706; Little Co. of Mary Hosp. v. Sebelius, 587 F.3d 849, 856 (7th Cir. 2009). Relevant here, Section 706 instructs that: "[t]he reviewing court shall: . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). To determine whether an agency's decision was arbitrary and capricious, district courts must decide whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Indiana Forest Alliance, Inc. v. U.S. Forest Service, 325 F.3d 851, 859 (7th Cir. 2003) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983)). In cases where the court

is asked to set aside an agency action on the ground that it was arbitrary and capricious, the "standard of review, established by the Administrative Procedure Act, is a narrow, highly deferential one." Bagdonas v. Dept. of Treasury, 93 F.3d 422, 425 (7th Cir. 1996). "[A]lthough the Court is to uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned, it may not supply a reasoned basis for the agency's action that the agency itself has not given." Id. at 426. "The district court must consider the agency action valid as long as it appears from the administrative record that the decision was supported by a rational basis." Id. at 425-26 (internal citation omitted). "[T]he scope of review . . . is narrow and the court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. "It's not enough that [the court] might have reached a different conclusion; so long as a reasonable mind could find adequate support for the decision, it must stand." Ogbolumani v. Napolitano, 557 F.3d 729, 733 (7th Cir. 2009). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

## V. ANALYSIS

### A. Defendants exceeded their authority under 8 U.S.C. 1504

The United States Supreme Court has recognized that the freedom to travel internationally is part of the "liberty" protected by the Fifth Amendment due process clause. A U.S. citizen generally requires a valid U.S. passport to exercise that freedom. See 8 U.S.C. § 1185(b). The U.S. Secretary of State is empowered by statute to grant and issue U.S. passports. See 8 U.S.C. § 211. An individual applying for a U.S. passport must provide evidence of citizenship and identity. See 22 C.F.R. §§ 51.23, 51.40. 19 18. The Department's regulations specify that proof of identity includes "the submission of a previous passport, other state, local, or federal government officially issued identification with photograph, or other identifying evidence which may include an affidavit of an identifying witness." See 22 C.F.R. § 51.23(b ). If the applicant satisfies these conditions, then a U.S. passport "shall be issued in the full name of the applicant, generally the name recorded in the evidence of nationality and identity." See 22 C.F.R. § 51.25(a). The Department accommodates deviations from a person's name of record in some circumstances. See 7 F.A.M. § 1300, Appendix C ("Names to be Used m Passports"). The government has the authority to revoke Plaintiff's passport pursuant to 22 C.F.R. § 51.62(a)(2) which allows the State Department to revoke a passport if "[t]he passport has been obtained illegally, fraudulently or erroneously; was created through illegality or fraud practiced upon the Department; or has been fraudulently altered or misused."

Here, the defendants' decision to revoke Qarwash's Plaintiff's passport was made in error, based on erroneous information contained in a statement obtained during a coercive interview of his sister Zuhour Mohsen Saleh Awad at the U.S. Embassy at Sana'a, Yemen. The information contained in this statement is unreliable and inaccurate. **56.1(b) 14-17, 21.** Prior to the revocation

of his passport, Plaintiff was not given an opportunity to provide evidence. **56.1(b) 20.** Furthermore, Plaintiff's sister's case has been reopened and is under consideration now at the U.S. Embassy in Djibouti. **56.1(b) 24.** Defendants claim that they were authorized to revoke Plaintiff's passport under 8 U.S.C. § 1504(a) (the authorizing statute for 22 C.F.R. § 51.62(a)(2)). See AR 15 (Revocation Letter). The defendants concluded that Plaintiff "failed to establish his identity as Mr. Qarwash Mohsen Awad and thus his use of that name to apply for a passport was "a false statement of material fact." Id. The Revocation Letter further concluded that Plaintiff's "true identity" was "Qarwash Attaf Saleh Kurwash." Id. However, Defendants have not disputed that Plaintiff applied for his passport in the same name of his genuine Certificate of Citizenship, or presented any evidence to support the "true identity" claim other than the Interrogation Statement of his sister. **56.1(b) 8 .**The evidence presented by the Defendants in support of this Motion for Summary Judgment does not provide meaningful justification for their revocation of the Plaintiff's passport. The Defendant misstates and distorts Plaintiff's position. Plaintiff has never asserted, as the defense now argues, that the State Department lacked the proper authority to revoke his passport. Indeed, a judicial certificate of citizenship is binding with respect to the rights and benefits of citizenship but Plaintiff in no way positions that said certificate should shield any citizen against *proper* passport revocation. Claiming Plaintiff's pleading demands the aforementioned absurd result, the defendants point to Plaintiff's Amended Complaint at paragraph fifty-six (56) which states:

> "Defendants revoked Plaintiff's passport pursuant to this policy and practice. Specifically, Defendants confiscated and revoked the Plaintiff's U.S. passport pursuant to 8 U.S.C. § 1504(a) on the basis of their reliance on so-called "false identity evidence." Defendants did not consider the identity evidence that the Plaintiff had presented with his Application

for Certificate of Citizenship. Defendants presented no evidence that Plaintiff was not the individual naturalized by the former legacy, "Immigration and Naturalization Services," in 2001, or that the Certificate of Citizenship given to the U.S. Department of State did not actually belong to him or was not issued for his use and possession, Defendants' decision did not rest on a valid question of identity."

However, paragraph 56 must be read in the proper context as it refers to paragraphs 53, 54, 55 respectively, which states:

53. Defendants' actions to revoke the Plaintiff's U.S. passport deprived Plaintiff of a constitutionally protected liberty interest under the Fifth Amendment, the freedom of international travel.

54. Defendants have a policy and practice of revoking U.S. passports as procured "fraudulently" under 8 U.S.C. § 1504 on the basis of the applicant's reliance on a so-called "false identity" despite: (a) an applicant's presentation of a judicial certificate of citizenship bearing the same name and identifying information as on the applicant's passport application; and (b) an undisputed certificate of citizenship issued by a federal court for the applicant's possession and use.

55. Defendants' policy and practice exceeds their statutory authority under 8 U.S.C. § 1504(a). Revocation of a passport under 8 U.S.C. § 1504(a) under such conditions amounts to an impermissible collateral attack on a judicial certificate of citizenship undermining its preclusive effect and directly conflicting with the exclusive provisions set out under 8 U.S.C. § 1451(a) for challenging a judicial order of U.S. citizenship.

It is clear that Plaintiff moves against Defendants' illegal policy and practice that resulted in an impermissible collateral attack on his liberties that derive from his citizenship. This Honorable

Court should decline the defendants' invitation to narrowly construe Plaintiff's pleadings. It is clear that the focus should not be on whether or not Plaintiff presented his certificate of citizenship to obtain a passport. Instead, the focus should be on the fact that Plaintiff was the undisputed holder of the certificate of citizenship, he met the identity requirements thereof and the privileges of a United States citizen now being undermined by the defendants' illegal policies. Once issued, the name on the Certificate of Citizenship, unless changed by subsequent court order or in accordance with state law, stands as the citizen's legal name and identity for official government purposes. For this reason, the State Department requires passport applicants to "explain any material discrepancies between the name on the application and the name recorded in the evidence of nationality and identity." 22 C.F.R. § 51.25(b). The State Department does not recognize changes from the name reflected on the Certificate of Citizenship unless supported by a court decree or reflected in government-issued identification. 22 C.F.R. § 51.25(c). Absent such proof of a name change, the State Department will issue the passport in the "the full name of the applicant . . . recorded in the evidence of nationality and identity" such as a Certificate of Citizenship. 22 C.F.R. § 51.25(a). The State Department's internal guidelines confirm that "he passport generally is issued in the name shown on the evidence of citizenship and identity, unless the applicant's name is subsequently changed by court order or through a customary change of name or as otherwise provided in the appendix." AR 218 (7 Foreign Affairs Manual ("FAM") § 1310(d), App. C). Here there have been different spellings of Plaintiff's name due to different translators translating his name from Arabic to Roman Alphabet. The different spellings of Plaintiff's name are; 1) Qarwash Moshen Saleh Awad, 2) Qarwash Mohsen Saleh Awad, 3) Qarwah Mohsen Saleh Awad, and 4) Qarwash Mohsn Awad. **56.1(b) 2.** The evidence in the record indicates Plaintiff has used this name in official documents,

8

including his passport applications. **56.1(b) 8.** Defendants have not disputed that Plaintiff was duly naturalized that his genuine Certificate of Citizenship declares his name to be "Mr. Qarwash Mohsen Awad." **56.1(b) 6.** Nor do they dispute that Mr. Awad has used that name at least since he immigrated to the United States. **56.1(b) 1.** Thus, as a matter of law, Mr. Qarwash Mohsen Awad is Plaintiff's true legal name and identity, and was his legal name when he applied for his passport. Defendants' decision to revoke of Plaintiff's passport is thus incorrect as a matter of law and should be set aside to the extent it relies on a holding that Plaintiff has "failed to establish his identity or that use of his name was a "false statement of material fact." See 5 U.S.C. § 706(2).

The Defendants' claim that the Plaintiff's citizenship remains intact, despite their revocation of his passport, and that the passport is merely an "identity document" belies the significance of that revocation to the Plaintiff's life and well-being. By denying, without good cause, the Plaintiff's ability to travel, the Defendants have prevented him from seeing his wife and children and to assist them in the extraordinarily difficult process of seeking an immigrant visa so they can reunite with him in the U.S. The Plaintiff denies any fraud or misrepresentation in completing his application for his passport and the Defendants have not established that it was obtained through any illegality, fraud or misrepresentation. The Defendants invite this Court to ignore the Plaintiff's Certificate of Citizenship citing that it is outside the administrative record. However, this Honorable Court is free to take into consideration evidence not reasonably disputed by judicial notice (See Federal Rules of Evidence).

**B. The State Department's revocation decision was arbitrary and capricious**

The evidence- solely Plaintiff's sister's unsupported and untested statement is not "substantial evidence" and the use of said statement to revoke Plaintiff's passport is not in

9

accordance with due process of law. The unsubstantial evidence presented by the Defendants in support of this Motion for Summary Judgment does not provide meaningful justification for their revocation of the Plaintiff's passport.  They have not established the nature of the investigation and have not established that the Plaintiff's sister's statement was voluntary or even accurate.   In fact, the evident unreliability and the unsubstantiated nature of the statement is clear as the Defendants themselves reinstated Plaintiff's sister's visa petition because of their failure to provide any evidence of the fraud and her case is currently awaiting a visa interview date at the U.S. Counsulate in Djibouti. **56.1(b) 12.**

The APA commands reviewing courts to "hold unlawful and set aside" agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... or unsupported by substantial evidence...." 5 U.S.C. § 706(2); *Hinsdale Hosp. Corp.*, 50 F.3d at 1399; *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381. Under both the "arbitrary and capricious" and "substantial evidence" standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.E.2d 443 (1983).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Travers v. Shalala, 20 F.3d 993, 996 (9th Cir. 1994). It is "more than a mere scintilla," Richardson, supra, but "less than a preponderance," Bates v. Sullivan, 894 F.2d 1059, 1061 (9th Cir.1990) (partially overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991) (en banc)). The court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the agency's decision. Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir.1991). Uncorroborated hearsay untested by cross-examination does not by itself constitute

"substantial evidence." See Consolidated Edison Co. v. NLRB, 305 U. S. 197, 230 (1938). There is no independent evidence to support Plaintiff's sister's Statement, or otherwise to establish that Plaintiff used a false identity or provided false information in connection with his application for passport. Because these undisputed facts establish, as a matter of law, that Qarwash Mohsen Awad is Plaintiff's legal name and identity, Defendants' revocation of his passport is not supported by "substantial evidence" rendering said revocation arbitrary and capricious. The Defendants have not established the nature of the investigation and have not established that the Plaintiff's sister's statement was voluntary or even accurate. The record is mysteriously silent as to how and why the United States government came to interrogate Plaintiff's sister in the first place. It is now clear that Plaintiff's sister was subject to threats and coercion during the interrogation on 9/8/2012. She was held for seven hours and during this time was told by Mohammed that if she did not sign the statement provided she would be subject to mistreatment, including being raped. **56.1(b) 13-15.** The alleged "Voluntary Statement" signed by Plaintiff's sister does not contain any indicia of accuracy. This statement contains no statement from an interpreter, the only person who would be qualified to attest that the statement contained information provided by Plaintiff's sister. In determining whether an agency decision is arbitrary, capricious it must be clear that the agency, "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Indiana Forest Alliance, Inc. v. U.S. Forest Service*, 325 F.3d 851, 859 (7th Cir. 2003) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983)). Under this highly deferential standard, "so long as a reasonable mind could find adequate support for the decision, it must stand." *Ogbolumani v. Napolitano*, 557 F.3d 729, 733

(7th Cir. 2009). Here, the sole uncorroborated statement shrouded in murkiness and mystery cannot form the basis of passport revocation.

### C. The Plaintiff has standing to challenge the State Department's revocation of his passport

In a case of actual controversy within its jurisdiction, as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, ***whether or not further relief is or could be sought.*** Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. Further, necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 USC 2201(a). Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings. 5 USC 704.

Here, Petitioner's passport was revoked by agency as a final act. Said act has no explicit language that requires hearing before seeking a reviewing court nor is there a right to proceed before a superior agency. Since these initial decisions become final agency decisions in the absence of an agency appeal. See 5 U. S. C. § 557(b). Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be "inoperative" pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review. It matters not that a petitioner *may* seek hearing by the same agency. The option does not create an obligation. Requiring litigants "to exhaust optional appeals" as well would be inconsistent with the plain language of" the statute. *Ghafoori v. Napolitano*, 713 F. Supp. 2d 871 - Dist. Court, ND California 2010. (See at 147, 113 S.Ct. 2539). Hence, the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA. But where the APA applies, an appeal to "superior agency authority" is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review. Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final" under § 10(c). *Darby v. Cisneros*, 509 US 137 - Supreme Court 1993**.** Here, Plaintiff's standing is obvious where he has been egregiously injured by the Defendants' conduct in revoking his passport, including the right to travel, the right to visit his family, the right to provide support for his family while they pursue an immigrant visa. Their decision to revoke his passport without giving due consideration to the evidence has directly caused this injury. Should his passport be reinstated, the ongoing injury to him will be remediated. Further, the Defendants'

have conceded this Court's jurisdiction over the agency's final decision to revoke his passport, they cannot now claim he lacks standing.

**D.  The Evidence tends to indicate that it does in fact apply an "anti-Yemeni" standard**

The Department of State has engaged in a policy, pattern, and practice of categorically applying heightened scrutiny to passport applicants who are born in Yemen. ***See the Yale Fordham Guardian Report.*** Yemeni-Americans whose passports have been seized on suspicion of fraud have been required to wait up to two years while the embassy clears up its suspicions. Consular officials use often vague accusations of fraud as excuses to illegally seize Yemeni-Americans' passports. The Department of State impermissibly and unlawfully applies a heightened burden of proof to Yemeni passport applications, subjecting the applicants to burdensome, unreasonable, and excessive demands for documentation that go far beyond what other applicants are required to submit. Even after applicants respond to the unreasonable demands for additional information, the Department of State, without a proper individualized, evidence-based adjudication of the merits of each application, arbitrarily denies their applications based on unverified fabricated evidence and refuses to issue them passports. The U.S. State Department's practices above circumvent the procedures and safeguards that normally must be respected in order to reach a result tantamount to the denaturalization and expatriation of a U.S. citizen. The U.S. State Department's practices above amounts to constructive denaturalization of Yemeni Americans causing them emotional and familial harms.

As noted above, the only evidence presented in this case to support the revocation of Plaintiff's passport is a statement taken under duress from Plaintiff's sister in connection with a visa petition which had been filed on her behalf by Plaintiff's father.  There is no other evidence to support the claim that Plaintiff or his father has ever used another identity.  There is, on the

14

other hand, evidence that Special Agent David W. Howell has been involved in other cases in which U.S. citizens of Yemeni extraction have wrongly been denied passports. According to news reports, officials have publicly stated that immigration fraud is widespread in Yemen, and that the Embassy in Sana'a considered all immigrant visa cases "fraudulent until proven otherwise" Id. This anti-Yemeni standard is at the hurt of the wrongs described herein and is the driving force in stripping Plaintiff of constitutional protection afforded to every U.S. citizen. **56.1(b) 25-31.**

### E. The Department of State violated the Plaintiff's Fifth Amendment right to Due Process by not applying a preponderance of the evidence standard, let alone a clear and convincing standard, prior to revocation of his U.S. passport

Defendants violated Plaintiff's Due Process Rights by Revoking his U.S. Passport Solely on the Basis of an Involuntary Statement without notice or hearing. The State Department's revocation of Plaintiff's passport based exclusively on an involuntary statement violated his Fifth Amendment due process rights, and should be held unlawful and set aside. 5 U.S.C. § 706(2). See *Kent*, 357 U.S. at 125; see also *Bauer v. Acheson*, 106 F. Supp. 445, 451 (D.D.C. 1952) (holding that revocation of passport without observing due process was without authority of law). Those protections bar the government from relying on involuntary statements against an individual in any proceeding in which due process protections apply, regardless of the standard of proof. Plaintiff's statement is unreliable support for the notion that "Mr. Qarwash Mohsen Awad" is Plaintiff's "false" or "fraudulent" name, involuntary confessions must be excluded irrespective of their reliability. "The aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false." *Lisenba v. California*, 314 U.S. 219, 236 (1941); see also *United States v. Preston*, 751 F.3d 1008, 1018 (9th Cir. 2014) ("A 'coerced confession is inadmissible under the

Due Process Clause even though statements in it may be independently established as true.'" (quoting *Watts v. Indiana*, 338 U.S. 49, 50 (1949))). The purpose of this exclusionary rule stems from "the deep-rooted feeling that the police must obey the law while enforcing the law." *Spano v. New York*, 360 U.S. 315, 320 (1959). See, also, *Blackburn v. Alabama*, 361 U.S. 199, 205-08 (1960) ("In cases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government . . . wrings a confession out of an accused against his will."). For these reasons, the use of involuntary statements is prohibited not only in criminal prosecutions, see id., but in any government proceeding that would curtail a liberty interest. See, *Bong Youn Choy v. Barber*, 279 F.2d 642, 647 (9th Cir. 1960) (finding that use of involuntary statement in administrative proceeding violated the Fifth Amendment); see also *Navia-Duran v. INS,* 568 F.2d 803, 810 (1st Cir. 1977) (finding statement inadmissible in an administrative proceeding because it was coerced in violation of the Fifth Amendment); *United States v. Kaba*, 999 F.2d 47, 50 (2d Cir. 1993) ("A coerced or otherwise involuntary statement may never be used for any purpose.").

Here, The Plaintiff's sister was lured out of her home by some agency official to the United States embassy in Yemen.. Plaintiff's sister was held from 8 am to 3 pm. alone and without food. After threating and terrifying Plaintiff's sister she told them "whatever they wanted to hear" **56.1(b) 15.**Without Plaintiff's sister's statement, the record would not have contained even a scintilla of evidence supporting the defendant's allegation that Plaintiff's identity was "false." Plaintiff was thus severely prejudiced by the government's violation of his Fifth Amendment due process rights. For these reasons, revocation should be set aside under 5 U.S.C. § 706(2). The evidence submitted by Defendants does not establish that the revocation of his passport was based on any evidence at all, let alone a preponderance or clear and convincing evidence. There

is no evidence that Plaintiff's father assumed a false identify when he immigrated from Yemen to the U.S. in 1984, and no evidence that Plaintiff ever had any identity other than the one he used to immigrate to the U.S. These are allegations only, and unsupported by any reliable evidence.

### F. Defendants Violated the APA and the Fifth Amendment Due Process Clause by Failing to Apply the Correct Standard of Proof.

The standard of proof plays an essential constitutional role where individual liberty is at stake. As the Supreme Court explains, "[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas,* 441 U.S. 418, 423 (1979) (citation and internal quotation marks omitted). The standard of proof also "allocates the risk of error between the litigants and indicates the relative importance to the ultimate decision." Id. Given the severe consequences of its decision, the government must justify a passport revocation by clear, unequivocal, and convincing evidence. Because Defendants did not apply that standard in revoking Plaintiff's passport they violated his Fifth Amendment due process rights, and their decision should be set aside and reversed. See 5 U.S.C. § 706(2).

The Appropriate Standard of Proof for Passport Revocations is "Clear, Unequivocal, and Convincing" Evidence. In determining what standard should apply, a court should assess the extent of an individual's liberty interest against the government's interest in regulating that liberty under a particular standard of proof. *Addington*, 441 U.S. at 425. The overarching concern of this analysis is "to minimize the risk of erroneous decisions." *Id.* The Supreme Court has described the range of standards of proof as a continuum. Id. at 423. At one end of the spectrum is "the typical civil case involving a monetary dispute between private parties," in

which the "mere preponderance of the evidence" applies. Id. This low standard adheres, the Court reasoned, because "society has a minimal concern with the outcome of . . . private suits." Id. At the other end of the spectrum is the "beyond a reasonable doubt" standard applied in criminal cases. Id. at 424. Between these two falls the intermediate clear, unequivocal, and convincing evidence standard—a standard that is "no stranger to the civil law." Id. at 424-25.The Court has used the intermediate standard of proof "to protect particularly important individual interests." Id. at 424. The intermediate standard is also typically used in civil cases "involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant." *Kennedy v. U.S. Citizenship & Immigration Servs.*, 871 F. Supp. 2d 996, 1008 n.19 (N.D. Cal. 2012). This intermediate standard of proof is "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting Addington, 441 U.S. at 425-26). Thus, the Supreme Court has mandated a heightened clear, unequivocal, and convincing standard in numerous contexts affecting individual liberty. See, *Nishikawa v. Dulles*, 356 U.S. 129, 134 (1958) (expatriation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Woodby v. INS*, 385 U.S. 276, 285-86 (1966) (deportation); Addington (civil commitment); Santosky (termination of parental rights). Freedom to travel abroad is similarly a significant and important liberty, as the Supreme Court has consistently made clear. See *Kent,* 357 U.S. at 126–27; *Vartelas v. Holder*, 132 S. Ct. 1479, 1488 (2012) ("Loss of the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from close family members."); *Eunique v. Powell,* 302 F.3d 971, 973 (9th Cir. 2002) ("It is undoubtedly true that there is a constitutional right to international travel"). Although the importance of this freedom alone merits a heightened

18

standard, its close relation with other important liberty interests reinforces the need for one. A U.S. citizen stranded abroad without a passport, for example, is separated from his or her home, family, livelihood, friends, and freedoms in the United States, a deprivation so drastic it is comparable to expatriation or deportation—deprivations for which the government has been held to a clear, unequivocal, and convincing evidence standard. See *Woodby*, 385 U.S. at 285 ("This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all bonds formed here and go to a foreign land where he often has no contemporary identification."). If a citizen's passport is revoked while she is already abroad, she may also lose the ability to travel home, a fundamental right of citizenship.See, also, Nguyen v. INS, 533 U.S. 53, 67 (2001) (referring to "the absolute right to enter [the United States'] borders" as a component of citizenship). A citizen abroad may also be exposed to great danger if a passport is suddenly revoked. See, e.g., Hamood Ali Nagi v. Kerry, Case No. 5:15-cv 00717-GW-SP, Dkt. 1 (C.D. Cal. Apr. 13, 2015) (alleging that State Department's revocation and confiscation of Yemeni-American man's U.S. passport during his layover in Dubai while en route to U.S. exposed him to risk of arrest by Dubai authorities due to overstay of transit visa). Such drastic, permanent, and irreparable deprivations cannot rest on the same standard used to decide cases involving a mere loss of money. Schneiderman v. United States, 320 U.S. 118, 159 (1943) (making denaturalization determinations on a standard lower than "'clear, unequivocal, and convincing' evidence" would mean that "valuable rights would rest upon a slender reed."); *Woodby*, 385 U.S. at 28586 (rejecting that "a person may be banished from this country upon no higher degree of proof than applies in a negligence case"). And when, as here, "the possible injury to the individual is significantly greater than any possible harm to the state," Addington, 441 U.S. at 427, the standard should favor the individual. In contrast, the

government's interest in preventing the erroneous issuance of passports, or the use of a false name on a passport, cannot be greater than its interest in preventing persons from wrongfully claiming citizenship status. See, Chaunt, supra; Schneiderman, supra; Lee Hon Lung v. Dulles, 261 F.2d 719, 724 (9th Cir. 1958) ("where one has, over a long period of years [over thirty-four years], acted in reliance upon a decision . . . admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing").

Finally, the Defendants have made absolutely no showing of any governmental interest in revoking Plaintiff's passport. The facts on record or cited in defendants 56a1 Statement of facts are totally void of iany notion that Plaintiff is a threat. The cases cited by Defendants are off mark since there is no scintilla or even whiff of evidence this Plaintiff seeks in any way to harm the U.S.

WHEREFORE, the Court should deny summary judgment for Defendants, and the Defendants should be charged costs in connection with its' motion.

Filed: April 22, 2016

                                           Respectfully Submitted,

                                           /S/June J. Htun
                                           June J. Htun, Esquire
                                           Attorney for Petitioner,
                                           3236 North Elston Avenue, Suite G
                                           Chicago, Illinois 60618
                                           P: 773-362-5000
                                           F: 773-362-5005
                                           jjhtun@gmail.com