UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QARWASH MOHSN AWAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Case No.: 1:15-cv-06146 |
| ) | |
| John Kerry, et al. ) | Honorable Gary Feinerman |
| ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

NOW COMES Plaintiff, Qarwash Mohsn Saleh Awad ("Plaintiff"), by his attorney, June J. Htun, pursuant to Local General Rule 56.1(b) of the United States District Court for the Northern District of Illinois, and for his statement of additional facts state:

1. Plaintiff's name is Qarwash Mohsn Saleh Awad and he was born on October 25, 1984 in Yafe'a, Lahj, Yemen. ***See Plaintiff's Birth Certificate, Attached herein as Exhibit I (PL_Ex.I). See also Plaintiff's Affidavit, attached hereto as Exhibit A. (PL_Ex.A). See also Plaintiff's Yemeni Passport and Identification, Attached hereto as Exhibit C (PL_C).***

2. There have been different spellings of Plaintiff's name due to different translators translating his name from Arabic to Roman Alphabet. The different spellings of Plaintiff's name are; 1) Qarwash Moshen Saleh Awad, 2) Qarwash Mohsen Saleh Awad, 3) Qarwah Mohsen Saleh Awad, and 4) Qarwash Mohsn Awad. ***PL_Ex.A.***

3. Plaintiff has never used the name, "Qarwash Attaf Saleh Kurwash." *PL_Ex.A*

4. Pursuant to the Child Citizenship Act, INA §320(a), 8 C.F.R. §320, a Certificate of Citizenship may be issued if; 1) Your parent must be a U.S. citizen; 2) You must be the biological child of that U.S. citizen parent, 3) You must be lawfully admitted to the United States for permanent residence; and 4) You must be living in the United States in the legal and physical custody of your U.S. citizen parent. Plaintiff' s father, Mohsn Saleh Awad is a Naturalized U.S. citizen. *See, Certificate of Naturalization for Mohsn Saleh Awad, attached hereto as Exhibit U (PL_Ex.U).*

5. Plaintiff is the biological child of Mohsn Saleh Awad. *See, DNA Relationship Analysis Case Report from Cellmark Diognostic, dated July 20, 2000, attached hereto as Exhibit B. (PL_Ex. B)* Plaintiff was admitted into the U.S. as a legal permanent resident on October 2, 2000 and lived in the legal and physical of his father, Mohsn Saleh Awad, in Chicago, Illinois. *PL_ Ex.A.*

6. On June 27, 2003, the U.S. Department of Justice issued Plaintiff a Certificate of Citizenship under Plaintiff's name Qarwash Moshen Saleh Awad. *See Plaintiff's Certificate of Citizenship, Attached hereto as Exhibit T.(PL_Ex.T)*

7. An individual applying for a U.S. passport must provide evidence of citizenship and identity. *See Administrative Record, Attached hereto as Exhibit S at 4-5, 14 (AR_Ex.S).*

8. Plaintiff was granted two passports. *See Plaintiff's passports , Attached hereto as Exhibit V (PL_Ex.V)*

9. Plaintiff, Mr. Qarwash Mohsn Awad, is United States Citizen. Plaintiff's father became a U.S. citizen through naturalization long before Qarwash immigration to the U.S., when he was still a young child. *PL_Ex.A.*

10. On February 20, 1996, Mohsen also filed 1-130 visa petitions for his three biological children; Bakeel, Noor and Zuhour. Mohsen decided not to proceed with the National Visa Center for the approved petitions for Noor and Zuhour because they were too young to immigrate to the United States without their mother. Mohsen was unable to proceed with the National Visa Center for Bakeel because he unfortunately died when he was struck by a car in Yemen. *PL_Ex_A.*

11. On November 12, 2004, Mohsen filed a new 1-130 visa petition for Noor. On February 17, 2016, the visa application SAA2005623017 was requested to be transferred to Djibouti. *See, Correspondence between Mohsn and the NVC, Attached hereto as Exhibit D (PL_Ex.D).*

12. On November 15, 2006, Mohsen filed a new 1-130 visa petition for Zuhour. The 1-130 was approved on May 1, 2007. On November 7, 2012, the U.S. Department of State denied a visa for Zuhour pursuant to Section 212(a)(6)(C)(I). *See, The Foreign Service of the United States of America Refusal Worksheet, attached hereto as Exhibit F. (PL_Ex.F).* However, due to the fact that the NVC was unable to provide Mohsen or Zuhour with any of the purportedly "false documents," Zuhour's visa petition was reinstated and is currently at the Dijibouti U.S. Embassy awaiting a visa interview. Case

number SAA2007641 035. ***See, Correspondence between Mohsn and the NVC, Attached hereto as Exhibit E. (PL_Ex.E).***

13. On September 8, 2012, Plaintiff's sister Zuhor Mohsn Saleh Awad was held, by the defendants, or their agents, at the United States Embassy in Sana'a, Yemen for nine hours under interrogation without food or water. She was very distraught to the point of tears. ***See Zuhur Awad's statement, Attached hereto as Exhibit R. (PL_Ex. R).***

14. The defendants, through or by their agents, at the United States Embassy, interrogated Plaintiff's sister to the point of duress under the threat to deny her visa application to the United States, forcing her to falsely state that her father's name is Attaf. ***PL_Ex.R.***

15. The defendants, through or by their agents, at the United States Embassy, interrogated Plaintiff's sister to the point of duress under the threat to deny her visa application to the United States, forcing her to falsely state that Plaintiff's name is Qarwash Attaf Saleh Kurwash. ***PL_Ex.R.***

16. The defendants, through or by their agents, at the United States Embassy, interrogated Plaintiff's sister to the point of duress under the threat to deny her visa application to the United States, promised to free Plaintiff's sister from interrogation and issue her a VISA in return for her false statements against Plaintiff. ***PL_Ex.R.***

17. The defendants created false reports based on false statements as a result of coercion and threat to Plaintiff's sister. ***AR_Ex.S.***

18. On June 8, 2015, Plaintiff and United States Citizen, Mr. Qarwash Mohsn Awad, was sitting on the airplane at Chicago O'Hare International Airport to travel to Cairo, Egypt to help his family lawfully immigrate to the United States of America. Instead, Plaintiff was removed from the airplane and initially questioned by the airline's employees. The airline employees questioned Plaintiff about the amount of money that he had on his person, the number of bags that he was travelling with, accused him of having two U.S. passports and threatened that he would go to jail for ten years. Subsequently, the airline employees detained the Plaintiff and confiscated his Illinois identification card, Illinois drivers' license, and U.S. Passport. *PL_Ex.A.*

19. Shortly after, U.S. Department of Homeland Security Enforcement Officer Alfredo Rivera, Jr. arrived at the scene and took a sworn statement from the Plaintiff. Officer Rivera, Jr. asked Qarwash several questions even though Qarwash had insisted that he wanted to speak to his attorney. Officer Rivera, Jr. continued to question Plaintiff and informed Plaintiff that on May 11, 2015, The United States Department of State revoked his U.S. passport pursuant to Section 51.62(a)(2) of Title 22 of the U.S. Code of Federal Regulations. *PL_Ex.A. and AR_S.*

20. Prior to Plaintiff's flight attempt he had never received notice or a letter advising him of the passport revocation. *PL_A.*

21. The Department of State's decision to revoke Qarwash's passport was made in error, based on erroneous information contained in a statement obtained during a coercive

interview of his sister at the U.S. Embassy at Sana'a, Yemen. The information contained in this statement is unreliable and inaccurate. **PL_Ex.R, PL_Ex.A.**

22. The United States government lured Zuhour to the US Embassy in Yemen under the false notion that she would receive her visa. **PL_Ex.R.**

23. When Zuhour arrived at the US Embassy she was situated there from 8 am to 3 pm. Zuhour was then interrogated, threatened, and forced to tell U.S. government officials, "whatever they wanted". **PL_Ex.R.**

24. Prior to the revocation of his passport, Qarwash was not given an opportunity to provide evidence. Furthermore, as stated above, his sister's case, Zuhour Mohsen Saleh Awad, has been reopened and is under consideration now at the U.S. Embassy in Djibouti. **PL_Ex.E.**

25. The Department of State has engaged in a policy, pattern, and practice of categorically applying heightened scrutiny to passport applicants who are born in Yemen. *See, Yemeni-Americans, Thrust Into Limbo, Say U.S. Embassy Unfairly Revokes Passports, The New York Times, May 27, 2015, State Department Taking Passports Away from Yemeni-Americans, Middle East Research and Information Project, August 9, 2014, US Citizens in Yemen accuse American embassy of confiscating passports, The Guardian, July 22, 2014, Citizenship, Passports, and the Legal Identity of Americans: Edward Snowden and Others Have a Case in the Courts, The Yale Law Journal Forum, April 23, 2014, Proxy Revocation as Proxy Denaturalization: Examining the*

*Yemen Cases, Fordham Law Review, 2014, attached hereto as Exhibit O,M,N, P, L respectively.*

26. Yemeni-Americans whose passports have been seized on suspicion of fraud have been required to wait up to two years before the embassy issues a temporary passport to return to the U.S. **Exhibit O,M,N, P, L**

27. Consular officials use often vague accusations of fraud as excuses to illegally seize Yemeni-Americans' passports. **Exhibit O,M,N, P, L**

28. The Department of State impermissibly and unlawfully applies a heightened burden of proof to Yemeni passport applications, subjecting the applicants to burdensome, unreasonable, and excessive demands for documentation that go far beyond what other applicants are required to submit. **Exhibit O,M,N, P, L**

29. Even after applicants respond to the unreasonable demands for additional information, the Department of State, without a proper individualized, evidence-based adjudication of the merits of each application, arbitrarily denies their applications based on unverified fabricated evidence and refuses to issue them passports. **Exhibit O,M,N, P, L**

30. The U.S. State Department's practices above circumvent the procedures and safeguards that normally must be respected in order to reach a result tantamount to the denaturalization and expatriation of a U.S. citizen. **Exhibit O,M,N, P, L**

31. The U.S. State Department's practices above amounts to constructive denaturalization of Yemeni Americans causing them emotional and familial harms. **Exhibit O,M,N, P, L**

Filed: April 22, 2016

                                        Respectfully Submitted,

                                        /S/June J. Htun

June J. Htun, Esquire
Attorney for Petitioner,
3236 North Elston Avenue, Suite G
Chicago, Illinois 60618
P: 773-362-5000
F: 773-362-5005
jjhtun@gmail.com