UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QARWASH MOHSN AWAD, | ) |
| Plaintiff, | ) |
| V. | ) Case No.: 1:15-cv-06146 |
| John Kerry, et al. | ) Honorable Gary Feinerman |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES Plaintiff, Qarwash Mohsn Saleh Awad ("Plaintiff"), by his attorney, June J. Htun, pursuant to FRCP 65, 5 U.S.C. § 705, 28 U.S.C. § 1651(a) and hereby moves this Honorable Court to enjoin the Department of State from revoking his Passport and for his motion state:

**INTRODUCTION**

Plaintiff's passport was taken from him at an airport in Cairo, Egypt based solely upon a coerced and unreliable statement given by his sister Zuhur, a statement that Plaintiff denounces. Plaintiff's sister's statement purportedly asserted that the name Plaintiff has used all his life is not in fact his real name. Plaintiff's sister purportedly signed the statement presented to her by Embassy officials after they had subjected her to hours of interrogation and confinement at the Embassy.

1

The use of said statement, which was obtained by coercion, violates Plaintiff's constitutional rights and therefore cannot form the basis for revocation of Plaintiff's passport. Further, Defendants' basis for revocation—that Plaintiff obtained his passport "fraudulently" despite using the name on his Certificate of Citizenship to apply for it—exceeds their statutory authority.

A preliminary injunction is necessary to vindicate Plaintiff's rights, and is warranted under the circumstances presented in this case. First, Plaintiff is likely to succeed on the merits of his constitutional claims, given the well-established constitutional right to travel and due process, and Defendants' failure to apply the appropriate standard of evidence to meet its burden of proof. Second, Plaintiff has been and continues to be irreparably harmed by Defendants' actions, and by his ongoing inability to travel without his passport. Third, the lawful exercise of constitutional rights presumptively serves the public interest, and the equities favor the party exercising those rights. Defendants gain little from depriving Plaintiff of his passport, while Plaintiff has lost his ability to travel, one of his fundamental constitutional rights. Absent a preliminary injunction, Plaintiff will continue to suffer irreparable harm.

## STATEMENT OF FACTS

1. On October 25, 1984, Plaintiff was born in Yafe'a, Lahj, Yemen. Plaintiff was named Qarwash Mohsn Saleh Awad by his parents Mohsen Saleh Awad and Fatima Plaintiff Saleh Al Hulaki. Plaintiff's parents were married on June 20, 1977. ***See Plaintiff's Birth Certificate, Attached herein as Exhibit I (PL_Ex.I). See also Plaintiff's Affidavit, attached hereto as Exhibit A. (PL_Ex.A). See also Plaintiff's Yemeni Passport and Identification, Attached hereto as Exhibit C (PL_C).***

2. Plaintiff's father, Mohsn Saleh Awad, became a U.S. citizen through naturalization long before Plaintiff's immigration to the U.S., when he was still a young child. **PL_Ex.A.**

3. Plaintiff is the biological child of Mohsn Saleh Awad. ***See, DNA Relationship Analysis Case Report from Cellmark Diognostic, dated July 20, 2000, attached hereto as Exhibit B. (PL_Ex. B)***

4. There have been different spellings of Plaintiff's name due to different translators translating his name from Arabic to Roman alphabet. The different spellings of Plaintiff's name are; 1) Qarwash Moshen Saleh Awad, 2) Qarwash Mohsen Saleh Awad, 3) Qarwah Mohsen Saleh Awad, and 4) Qarwash Mohsn Awad. **PL_Ex.A.**

5. Plaintiff has never used the name, "Qarwash Attaf Saleh Kurwash." **PL_Ex.A**

6. Pursuant to the Child Citizenship Act, INA §320(a), 8 C.F.R. §320, a Certificate of Citizenship may be issued if; 1) Your parent must be a U.S. citizen; 2) You must be the biological child of that U.S. citizen parent, 3) You must be lawfully admitted to the United States for permanent residence; and 4) You must be living in the United States in the legal and physical custody of your U.S. citizen parent. Plaintiff's father, Mohsn Saleh Awad is a Naturalized U.S. citizen. ***See, Certificate of Naturalization for Mohsn Saleh Awad, attached hereto as Exhibit U (PL_Ex.U).***

3

7. Plaintiff was admitted into the U.S. as a legal permanent resident on October 2, 2000 and lived in the legal and physical of his father, Mohsn Saleh Awad, in Chicago, Illinois. *PL_Ex.A.*

8. On June 27, 2003, the U.S. Department of Justice issued Plaintiff a Certificate of Citizenship under Plaintiff's name Qarwash Moshen Saleh Awad. *See Plaintiff's Certificate of Citizenship, Attached hereto as Exhibit T.(PL_Ex.T)*

9. An individual applying for a U.S. passport must provide evidence of citizenship and identity. *See Administrative Record, Attached hereto as Exhibit S at 4-5, 14 (AR_Ex.S).*

10. Plaintiff was granted two passports. *See Plaintiff's passports , Attached hereto as Exhibit V (PL_Ex.V)*

11. Plaintiff, Mr. Qarwash Mohsn Awad is a United States Citizen.

12. Plaintiff submitted substantial evidence in connection with this visa was his parents' marriage certificate, a late issued birth certificate, and identity documents - Mohsen had previously submitted proof of the relationship and his own U.S. citizenship.

13. Plaintiff had previously submitted evidence of his identity in Yemen, including national identification documents dated May 27, 1995, and Yemeni passport that was issued on October 12, 1999. *See, Copy of Yemeni National identification and Copy of Yemeni Passport, attached hereto as Exhibit C.*

14. Plaintiff's father primarily lived in the U.S. from 1984 until May 2013. However, he travelled back to Yemen frequently and his wife, Fatima Plaintiff Saleh AI Hulaki, gave birth to four children from this marriage: Qarwash Mohsen Saleh Awad, Bakeel Mohsen Saleh Awad, Noor Mohsen Saleh Awad and Zuhur Mohsen Saleh Awad.

15. On February 20, 1996, Mohsen also filed 1-130 visa petitions for his three biological children; Bakeel, Noor and Zuhur. Mohsen decided not to proceed with the National Visa Center for the approved petitions for Noor and Zuhur because they were too young to immigrate to the United States without their mother. Mohsen was unable to proceed with the National Visa Center for Bakeel because he unfortunately died when he was struck by a car in Yemen. *PL_Ex_A.*

16. On November 12, 2004, Mohsen filed a new 1-130 visa petition for Noor. On February 17, 2016, the visa application SAA2005623017 was requested to be transferred to Djibouti. *See, Correspondence between Mohsn and the NVC, Attached hereto as Exhibit D (PL_Ex.D).*

17. On November 15, 2006, Mohsen filed a new 1-130 visa petition for Zuhur. The 1-130 was approved on May 1, 2007. On November 7, 2012, the U.S. Department of State denied a visa for Zuhu pursuant to Section 212(a)(6)(C)(I). *See, The Foreign Service of the United States of America Refusal Worksheet, attached hereto as Exhibit F. (PL_Ex.F).* However, due to the fact that the NVC was unable to provide Mohsen or Zuhur with any of the purportedly "false documents," Zuhur's visa petition was reinstated and is currently at the Djibouti U.S. Embassy awaiting a visa interview. Case number SAA2007641 035. *See, Correspondence between Mohsn and the NVC, Attached hereto as Exhibit E. (PL_Ex.E).*

18. On September 8, 2012, Plaintiff's Sister Zuhur Mohsn Saleh Awad was summoned and held, by the defendants, or their agents, at the United States Embassy in Sana'a, Yemen for nine hours under interrogation without food or water. She was very distraught to the point of tears. ***See Zuhur Awad's statement, Attached hereto as Exhibit R. (PL_Ex. R).***

19. The defendants, through or by their agents, at the United States Embassy, interrogated Plaintiff's sister to the point of duress under the threat to deny her visa application to the United States, forcing her to falsely state that her father's name is Attaf. ***PL_Ex.R.***

20. The defendants, through or by their agents, at the United States Embassy, interrogated Plaintiff's sister to the point of duress under the threat to deny her visa application to the United States, forcing her to falsely state that Plaintiff's name is Qarwash Attaf Saleh Kurwash. ***PL_Ex.R.***

21. The defendants, through or by their agents, at the United States Embassy, interrogated Plaintiff's sister to the point of duress under the threat to deny her visa application to the United States, promised to free Plaintiff's sister from interrogation and issue her a VISA in return for her false statements against Plaintiff. ***PL_Ex.R.***

22. The defendants created false reports based on false statements as a result of coercion and threat to Plaintiff's sister. ***AR_Ex.S.***

23. On June 8, 2015, Plaintiff and United States Citizen, was sitting on the airplane at Chicago O'Hare International Airport to travel to Cairo, Egypt to help his family lawfully immigrate to the United States of America. Instead, Plaintiff was removed from the

6

airplane and initially questioned by the airline's employees. The airline employees questioned Plaintiff about the amount of money that he had on his person, the number of bags that he was travelling with, accused him of having two U.S. passports and threatened that he would go to jail for ten years. Subsequently, the airline employees detained the Plaintiff and confiscated his Illinois identification card, Illinois drivers' license, and U.S. Passport. ***PL_Ex.A.***

24. Shortly after, U.S. Department of Homeland Security Enforcement Officer Alfredo Rivera, Jr. arrived at the scene and took a sworn statement from the Plaintiff. Officer Rivera, Jr. asked Plaintiff several questions even though Plaintiff had insisted that he wanted to speak to his attorney. Officer Rivera, Jr. continued to question Plaintiff and informed Plaintiff that on May 11, 2015, The United States Department of State revoked his U.S. passport pursuant to Section 51.62(a)(2) of Title 22 of the U.S. Code of Federal Regulations. ***PL_Ex.A. and AR_S.***

25. Prior to Plaintiff's flight attempt he had never received notice or a letter advising him of the passport revocation. ***PL_A.***

26. The Department of State's decision to revoke Plaintiff's passport was made in error, based on erroneous information contained in a statement obtained during a coercive interview of his sister at the U.S. Embassy at Sana'a, Yemen. The information contained in this statement is unreliable and inaccurate. ***PL_Ex.R, PL_Ex.A.***

27. The United States government lured Zuhour to the US Embassy in Yemen under the false notion that she would receive her visa. ***PL_Ex.R.***

28. When Zuhour arrived at the US Embassy she was situated there from 8 am to 3 pm. Zuhour was then interrogated, threatened, and forced to tell U.S. government officials, "whatever they wanted". ***PL_Ex.R.***

29. Prior to the revocation of his passport, Plaintiff was not given an opportunity to provide evidence. Furthermore, as stated above, his sister's case, Zuhour Mohsen Saleh Awad, has been reopened and is under consideration now at the U.S. Embassy in Djibouti. ***PL_Ex.E.***

30. The Department of State has engaged in a policy, pattern, and practice of categorically applying heightened scrutiny to passport applicants who are born in Yemen. ***See, Yemeni-Americans, Thrust Into Limbo, Say U.S. Embassy Unfairly Revokes Passports, The New York Times, May 27, 2015, State Department Taking Passports Away from Yemeni-Americans, Middle East Research and Information Project, August 9, 2014, US Citizens in Yemen accuse American embassy of confiscating passports, The Guardian, July 22, 2014, Citizenship, Passports, and the Legal Identity of Americans: Edward Snowden and Others Have a Case in the Courts, The Yale Law Journal Forum, April 23, 2014, Proxy Revocation as Proxy Denaturalization: Examining the Yemen Cases, Fordham Law Review, 2014, attached hereto as Exhibit O,M,N, P, L respectively.***

31. Yemeni-Americans whose passports have been seized on suspicion of fraud have been required to wait up to two years before the embassy issues a temporary passport to return to the U.S. ***Exhibit O,M,N, P, L***

32. Consular officials use often vague accusations of fraud as excuses to illegally seize Yemeni-Americans' passports. *Exhibit O,M,N, P, L*

33. The Department of State impermissibly and unlawfully applies a heightened burden of proof to Yemeni passport applications, subjecting the applicants to burdensome, unreasonable, and excessive demands for documentation that go far beyond what other applicants are required to submit. *Exhibit O,M,N, P, L*

34. Even after applicants respond to the unreasonable demands for additional information, the Department of State, without a proper individualized, evidence-based adjudication of the merits of each application, arbitrarily denies their applications based on unverified fabricated evidence and refuses to issue them passports. *Exhibit O,M,N, P, L*

35. The U.S. State Department's practices above circumvent the procedures and safeguards that normally must be respected in order to reach a result tantamount to the denaturalization and expatriation of a U.S. citizen. *Exhibit O,M,N, P, L*

36. The U.S. State Department's practices above amounts to constructive denaturalization of Yemeni Americans causing them emotional and familial harms. *Exhibit O,M,N, P, L*

37. On or about January 27, 2016, and pursuant to the aforementioned illegal policy, USCIS in concert with the Department of State, issued Plaintiff a Notice of Intent to Cancel Certificate of Citizenship*. A copy of this Notice is attached.*

## ACTIONS FOR INJUNCTIVE RELIEF

**A. STAY UNDER 5 U.S.C. § 705 RELIEF PENDING REVIEW**

The purpose of a temporary restraining order or preliminary injunction is to maintain the status quo while a lawsuit is pending. *EEOC v. City of Janesville, 630 F.2d 1254, 1259 (7th Cir.1980),*

Here, under the Administrative Procedures Act ("APA") the Court may review a challenge to agency action by an aggrieved party because the APA authorizes courts to issue preliminary relief to "postpone the effective date of an agency action" or to "preserve status or rights pending conclusion of the review proceedings." *See 5 U.S.C. § 705*. While it is true Section 705 does not authorize district courts to issue temporary restraining orders that alter the status quo or dictate specific terms and conditions to an agency. However, section 705 does authorize this Court to maintain the status quo. The purpose of a preliminary injunction is to preserve the status quo, see, e.g., *EEOC v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir.1980). The purpose of 5 U.S.C. § 705 to provide an aggrieved party with relief pending judicial review. 5 U.S.C. § 705 states:

> "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

The status quo in this case before agency action is that plaintiff's passport was valid, in force and free from attack. Plaintiff hereby request a that this Honorable Court enjoin the department of state from revoking Plaintiff's passport until judicial review is completed thus maintaining the status quo.

## B. ENJOINMENT UNDER THE ALL WRITS ACT 28 U.S.C. § 1651(a).

The "All Writs Act," authorizes a federal court to issue "all writs necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act has been interpreted to empower a federal court "to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone*

*Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). This power extends, under appropriate circumstances, to Department of State since it is in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *Id. at 174, 98 S.Ct. 364.*

The All Writs Act is applicable 1) if no statute, law or rule on the books to deal with the specific issue at hand. 2) The business or entity in question has some connection to the matter. 3) There are extraordinary circumstances that justify the use of the All Writs Act. 4) The All Writs Act only applies if compliance is not an unreasonable burden.

In this scenario, Plaintiff meets all four qualifications of the All Writs Act. First, there isn't a law or statute specifically compelling the Department of State to stay cancellation of Plaintiff's passport. Second, Department of State is clearly connected to this instant matter as a defendant and revoking agency. Third, it cannot be reasonably argued that cancelation of Plaintiff's Passport is not as an extraordinary circumstance where his constitutional rights are being violated. Lastly and simply, Plaintiff's request that the Department of State overturn its passport revocation is not "unreasonably burdensome' because the underlying facts under judicial review are intertwined with a question of Plaintiff's constitutional rights, citizenship and standing. Allowing Plaintiff's passports to remain revoked would undermine the proper administration of justice.

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th Cir.2012). If the movant satisfies these three requirements, a court considers the irreparable harm the nonmoving party will suffer if it grants the injunction, balancing the harm against the irreparable harm the moving party will suffer if it does not. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). It must also consider

the public interest in denying or granting the injunction. *Id. at 896.* In the end, a court weighs these factors under a "sliding scale approach," under which, "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id. at 895. II.*

### C. PRELIMINARY INJUNCTION UNDER F.R.C.P. 65.

This Honorable Court is vested with the authority to enjoin any other persons who are in active concert or participation with defendants to deny Plaintiff's rights and privileges. See F.R.C.P. 65. To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th Cir.2012). If the movant satisfies these three requirements, a court considers the irreparable harm the nonmoving party will suffer if it grants the injunction, balancing the harm against the irreparable harm the moving party will suffer if it does not. *Ty, Inc. v. Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001). It must also consider the public interest in denying or granting the injunction. *Id. at 896*. In the end, a court weighs these factors under a "sliding scale approach," under which, "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id. at 895. II.*

### I. Plaintiff is Likely to Succeed on the Merits.

International travel is a basic facet of American life; the State Department estimates that over 120 million valid U.S. passports were in circulation in 2014. As the Supreme Court has explained, travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads.

Freedom of movement is basic in our scheme of values. *Kent v. Dulles*, 357 U.S. 116, 126 (1958). A few years later, Justice Douglas elaborated: Freedom of movement, at home and abroad, is important for job and business opportunities—for cultural, political, and social activities—for all the commingling which gregarious man enjoys…. This freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful—knowing, studying, arguing, exploring, conversing, observing and even thinking. Once the right to travel is curtailed, all other rights suffer, just as when curfew or home detention is placed on a person. *Aptheker v. Secretary of State*, 378 U.S. 500, 519-20 (1964) (Douglas, J., concurring) (emphasis added). Freedom of travel is inextricably linked with other rights and liberty interests, such as freedom of association or the ability to care for a child abroad. See, e.g., *Id. at 517* (noting that "freedom of travel is constitutional liberty closely related to rights of free speech and association," and holding that law authorizing Department of State to withhold passports on basis of alleged membership in Communist Party was unconstitutional). This freedom to travel abroad "is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Kent*, 357 U.S. at 125. Though Defendant Department of State has the exclusive authority to issue U.S. passports to U.S. citizens, see 22 U.S.C. § 211a, the Department of State is bound by the Fifth Amendment's due process clause in the issuance of passports since a valid passport is necessary to exercise one's freedom to travel abroad. See *8 U.S.C. § 1185(b).*

In this context, the government must afford procedural due process when taking steps that would curtail a U.S. citizen's freedom to travel abroad. See, *DeNieva v. Reyes*, 966 F.2d 480, 485 (9th Cir. 1992) (foreign national's due process rights violated when foreign passport was confiscated without hearing). To state a constitutional violation in this context, a plaintiff must

13

allege facts showing that he was deprived of a liberty without constitutionally sufficient procedures. See *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Hannemann v. Southern Door Counfy Sch. Dist*., 673 F.3d 746, 752 (7th Cir. 2012). The amount of due process owed is "flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334. At a minimum, due process requires that the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). Here, the Department violated Plaintiff's fundamental due process protections barring the use of involuntary statements and requiring the government to support the restriction of the right to travel abroad with clear and convincing evidence. Second, the State Department's substantive basis for the revocation or denial of a U.S. passport must have been authorized by Congress. See *Kent,* 357 U.S. at 128-29 (Secretary of State does not have "unbridled discretion to grant or withhold a passport from a citizen for any substantive reason he may choose," but rather, must do so "pursuant to the lawmaking functions of the Congress"). In this case, the Department exceeded its statutory authority under *8 U.S.C. § 1504* by revoking Plaintiff's passport in a manner that amounted to a collateral attack on his judicial Certificate of Citizenship.

## II. Defendants violated Plaintiff's due process rights by revoking his U.S. passport solely on the basis of an coerced involuntary statement.

The evidence- solely Plaintiff's sister's unsupported and untested statement is not "substantial evidence" and the use of said statement to revoke Plaintiff's passport is not in accordance with due process of law. The unsubstantial evidence presented by the Defendants in support of this Motion for Summary Judgment does not provide meaningful justification for their

14

revocation of the Plaintiff's passport. They have not established the nature of the investigation and have not established that the Plaintiff's sister's statement was voluntary or even accurate.

The APA commands reviewing courts to "hold unlawful and set aside" agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... or unsupported by substantial evidence...." *5 U.S.C. § 706(2); Hinsdale Hosp. Corp.*, 50 F.3d at 1399; *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381. Under both the "arbitrary and capricious" and "substantial evidence" standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.E.2d 443 (1983).

There is no independent evidence to support Plaintiff's sister's Statement, or otherwise to establish that Plaintiff used a false identity or provided false information in connection with his application for passport. Because these undisputed facts establish, as a matter of law, that Qarwash Mohsen Awad is Plaintiff's legal name and identity, Defendants' revocation of his passport is not supported by "substantial evidence" rendering said revocation arbitrary and capricious. The Defendant have not established the nature of the investigation and have not established that the Plaintiff's sister's statement was voluntary or even accurate. The record is mysteriously silent as to how and why the United States government came to interrogate Plaintiff's sister in the first place. It is now clear that Plaintiff's sister was subject to threats and coercion during the interrogation on September 8, 20012. She was held for seven hours and during this time was told by an Officer that if she did not sign the statement provided she would be subject to mistreatment, including being raped. The alleged "Voluntary Statement" signed by Plaintiff's sister does not contain any indicia of accuracy. This statement contains no statement from an interpreter, the only person who would be qualified to attest that the statement contained

15

information provided by Plaintiff's sister. In determining whether an agency decision is arbitrary, capricious it must be clear that the agency, "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Indiana Forest Alliance, Inc. v. U.S. Forest Service*, 325 F.3d 851, 859 (7th Cir. 2003) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983)). Under this highly deferential standard, "so long as a reasonable mind could find adequate support for the decision, it must stand." *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009). Here, the sole uncorroborated statement shrouded in murkiness and mystery cannot form the basis of passport revocation.

### III.    Defendants Violated the APA and the Due Process Clause by Failing to Apply the Correct Standard of Proof.

The standard of proof plays an essential constitutional role where individual liberty is at stake.  As the Supreme Court explains, "[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas,* 441 U.S. 418, 423 (1979) (citation and internal quotation marks omitted).  The standard of proof also "allocates the risk of error between the litigants and indicates the relative importance to the ultimate decision." Id. Given the severe consequences of its decision, the government must justify a passport revocation by clear, unequivocal, and convincing evidence.  Because Defendants did not apply that standard in revoking Plaintiff's passport they violated his due process rights, and their decision should be set aside and reversed.  See *5 U.S.C. § 706(2).*

The Appropriate Standard of Proof for Passport Revocations is "Clear, Unequivocal, and Convincing" Evidence. In determining what standard should apply, a court should assess the

extent of an individual's liberty interest against the government's interest in regulating that liberty under a particular standard of proof. *Addington*, 441 U.S. at 425. The overarching concern of this analysis is "to minimize the risk of erroneous decisions." *Id.* The Supreme Court has described the range of standards of proof as a continuum. *Id. at 423*. At one end of the spectrum is "the typical civil case involving a monetary dispute between private parties," in which the "mere preponderance of the evidence" applies. *Id.* This low standard adheres, the Court reasoned, because "society has a minimal concern with the outcome of . . . private suits." Id. At the other end of the spectrum is the "beyond a reasonable doubt" standard applied in criminal cases. *Id. at 424*. Between these two falls the intermediate clear, unequivocal, and convincing evidence standard—a standard that is "no stranger to the civil law." *Id. at 424-25.*The Court has used the intermediate standard of proof "to protect particularly important individual interests." Id. at 424. An intermediate standard of proof is "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington,* 441 U.S. at 425-26). Thus, the Supreme Court has mandated a heightened clear, unequivocal, and convincing standard in numerous contexts affecting individual liberty. See, *Nishikawa v. Dulles*, 356 U.S. 129, 134 (1958) (expatriation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Woodby v. INS*, 385 U.S. 276, 285-86 (1966) (deportation); Addington (civil commitment); Santosky (termination of parental rights). Freedom to travel abroad is similarly a significant and important liberty, as the Supreme Court has consistently made clear. See *Kent,* 357 U.S. at 126–27; *Vartelas v. Holder*, 132 S. Ct. 1479, 1488 (2012) ("Loss of the ability to travel abroad is itself a harsh penalty, made all the more devastating if it means enduring separation from close family members."); *Eunique*

17

*v. Powell,* 302 F.3d 971, 973 (9th Cir. 2002) ("It is undoubtedly true that there is a constitutional right to international travel"). Although the importance of this freedom alone merits a heightened standard, its close relation with other important liberty interests reinforces the need for one. And when, as here, "the possible injury to the individual is significantly greater than any possible harm to the state," *Addington,* 441 U.S. at 427, the standard should favor the individual. In contrast, the government's interest in preventing the erroneous issuance of passports, or the use of a false name on a passport, cannot be greater than its interest in preventing persons from wrongfully claiming citizenship status. *Lee Hon Lung v. Dulles,* 261 F.2d 719, 724 (9th Cir. 1958) ("where one has, over a long period of years [over thirty-four years], acted in reliance upon a decision . . . admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing").

**II.     No adequate remedy at law**

It is undisputed that the secretary of state is allowed to and has revoked Plaintiff's passport without hearing. Upon revocation and while this instant suit is pending Plaintiff has no remedy at law by which to exercise his constitutional right to travel.

**III.    Plaintiff Has Suffered and Continues to Endure Irreparable Harm From the Continued Violation of his Constitutional Rights**.

It is well-established that, as a matter of law, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); the court have repeatedly found that Plaintiffs suffer a cognizable and irreparable harm stemming from the violation of their constitutional rights of due process. As the Seventh Circuit noted, "[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm."

*Preston v. Thompson*, 589 F.2d 300, 303 n. 3 (7th Cir.1978); see also *Does v. City of Indianapolis*, No. 1:06-cv-865-RLY-WTL, 2006 WL 2927598, *11 (S.D.Ind. Oct. 5, 2006) (quoting *Cohen v. Coahoma Cnty., Miss.*, 805 F.Supp. 398, 406 (N.D.Miss.1992) for the proposition that "[i]t has been repeatedly recognized by federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law."). A further showing of irreparable harm often is not required when monetary damages are not at stake. See *Back v. Carter*, 933 F.Supp. 738, 754 (N.D.Ind.1996) (internal quotation and citation omitted). The rule that courts do not require a further showing of irreparable harm "is based on the belief that equal protection rights are so fundamental to our society that any violation of these rules causes irreparable harm." *Id*. See *Fisher v. Kealoha, No. 11–00589 ACK–BMK,* 2012 WL 2526923, at *11 (D. Haw. June 29, 2012) (finding that Plaintiff being deprived of a liberty and property interest, and "deprivation of that constitutional right requires a finding of irreparable injury.").

Here, by depriving Plaintiff of his passport without due process, the State is preventing Plaintiff from exercising his fundamental right to travel abroad. See *Kent*, 357 U.S. at 125; *Aptheker*, 378 U.S. at 505.

## CONCLUSION

For these reasons, Plaintiff's motion for preliminary injunction should be granted and his passport returned or reissued to him.

Filed: May 4, 2016

                                            Respectfully Submitted,

                                            /S/June J. Htun
                                            June J. Htun, Esquire
                                            Attorney for Petitioner,
                                            3236 North Elston Avenue, Suite G
                                            Chicago, Illinois 60618
                                            P: 773-362-5000

F: 773-362-5005  
jjhtun@gmail.com