**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| _____ ) | |
| QARWASH MOHSN AWAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Case No.: 1:15-cv-06146 |
| ) | |
| John Kerry, et al. ) | Honorable Gary Feinerman |
| ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS CROSS-MOTION**
**FOR SUMMARY JUDGMENT**

Plaintiff, by and through his attorney, June J. Htun, hereby reply in support of his cross-motion for Summary Judgment.

**INTRODUCTION**

Defendants' reply in support of Motion for Summary Judgment (ECF Dkt. No. 68) largely rests on the contention that Plaintiff's sister's statement was voluntarily signed and that there was an "independent investigation" conducted by the State Department to revoke Plaintiff's passport. Defendant further contends that Plaintiff has missed his bite at the apple by failing to "testify, offer evidence on his own behalf, present witnesses, and make arguments" at an administrative hearing before the agency, during which he could have raised any due process claims. Lastly, the defendants argue that Plaintiff's position fails since fraudulently obtaining a certificate of citizenship never transmutes the false name on that certificate into his "true legal name and identity."

The Defendants are wrong in several respects. Defendants' have admitted that (ECF Dkt. No. 68, footnote 2), "the Department erroneously stated Plaintiff's sister had "provided a written, sworn statement that your true identity is Qarwash Attaf Saleh Kurwash." (CAR at 15). In fact, Plaintiff's sister did not specifically reference Plaintiff…" Defendants further state that "the letter's misattribution of Plaintiff's true identity to his sister's statement – which Plaintiff has not raised – in no way undercuts the substantial record evidence supporting the Department's conclusion that Plaintiff made a "false statement of fact in [his] passport application." (ECF Dkt. No. 68, footnote 2). The Defendants concede that the Plaintiff was never mentioned in his sister's sworn statement, yet they then then undermine the severity of the "letter's misattribution." The Defendant's May 11, 2015 revocation letter to Plaintiff completely fabricated the sole basis for revoking Plaintiff's passport. Without this fabrication/"letter's misattribution" there is NO evidence that the Defendants have to substantiate the defamatory and harsh accusations of passport fraud. In an attempt to save face the Defendants proceed with the ridiculous argument that in spite of the letter's misattribution there is "substantial record evidence supporting the conclusion." If there really was "substantial record evidence" this substantial record evidence should have been at the forefront in its' May 11, 2015 Revocation letter.

Moreover, matters of public record by which this Court may take judicial notice coupled with the administrative record establish the unconstitutionality associated with revoking and depriving Plaintiff of his passport. Plaintiff had no obligation to avail himself of an administrative hearing where his due process rights would have been violated and he would have wasted time and increased the chances of harm to his family abroad. Finally, Plaintiff's name is not false and there is no presumption recognized in law to the contrary.

## ARGUMENT

I. **Plaintiff's sister's statement was not voluntarily signed at a US Embassy with two Department officials present.**

The Defendants argue that nothing in the record supports Plaintiff's assertion that Plaintiff's sister's statement was coerced. It is their unsupported contention that the statement was "coherent, signed and sworn, and provided voluntarily at a US embassy with two Department officials present.

First, there is nothing in this statement that demonstrates that it is "coherent." There is nothing logical, rational or sound about her statement. This statement was taken from the Plaintiff's sister in relation to her visa application. In fact, as previously stated, the Defendants' have admitted that (ECF Dkt. No. 68, footnote 2), "the Department erroneously stated Plaintiff's sister had "provided a written, sworn statement that your true identity is Qarwash Attaf Saleh Kurwash." (CAR at 15). In fact, Plaintiff's sister did not specifically reference Plaintiff…" Defendants further state that "the letter's misattribution of Plaintiff's true identity to his sister's statement – which Plaintiff has not raised – in no way undercuts the substantial record evidence supporting the Department's conclusion that Plaintiff made a "false statement of fact in [his] passport application." (ECF Dkt. No. 68, footnote 2). The Defendants concede that the Plaintiff was never mentioned in his sister's sworn statement, yet they then then undermine the severity of the "letter's misattribution." The Defendant's May 11, 2015 revocation letter to Plaintiff completely fabricated the sole basis for revoking Plaintiff's passport. Without this fabrication/"letter's misattribution" there is NO evidence that the Defendants have to substantiate the defamatory and harsh accusations of passport fraud.

3

Second, Plaintiff's sister's letter is signed but the purportedly voluntary statement was not signed by "Zuhour Attaf Saleh Kurwash." The only signature that appears on the Plaintiff's sister's September 8, 2012 statement is simply, "Zuhour."

This supports our third contention in that this letter was not voluntarily at a US embassy with two Department officials present. Had Plaintiff's sister truly given a voluntary statement she would have signed her true name. By refusing to sign the September 8, 2012 statement as Zuhour Attaf Saleh Kurwash it should raise severe doubt in the willingness of Plaintiff's sister and veracity of the contents of this statement. Furthermore, the Defendants fabricate another aspect of this September 8, 2012 statement. Nowhere in this September 8, 2012 statement does it state that there were two Department officials present at the time of the statement. The name and signature of special agent David W. Howell does appear on this September 8, 2012 statement but there is no evidence of a second department official that was present on this date. There appears to be a signature of a witness by the name of "Mohammed or Muhammed" but there is no indication who this person is. Additionally, the signature of "Mohammed or Muhammed" only witnessed the statement. There is no signature of the person who supposedly translated the document to Plaintiff's sister. Absent the signature of a translator who translated the statement to Plaintiff's sister from English to Arabic, the only conclusion to be made is that there was no translator who translated the statement to Plaintiff's sister.

The Guardian reflects that there may have been over a hundred cases of illegal passport revocations against people from Yemen. The Guardian reports Khaled's story or coercion and threats at the hands of interrogators upon confiscation of his passport. *ECF Dkt. No. 41 Collecting Exhibit Articles.* The Middle East Research Project and Information Project reports that those interrogated were tricked into false confessions of wrongdoing. *Id*. These documents

4

coupled with the administrative record paints a grim picture of improprieties by the defendants. This Court simply cannot accept Defendants' claims that after an independent investigation, the State Department concluded that Plaintiff's name is Qarwash Attaf Saleh Kurwash, not Qarwash Mohsn Awad where the entire record undermines such claims.

II.    **Plaintiff was not required to request an administrative hearing or otherwise exhaust his administrative remedies before receiving judicial review, therefore defendants cannot argue nor should this Honorable Court find that Plaintiff cannot now show the procurement of his sister's statement was unlawful and in violation of Plaintiff's due process.**

The defendants are vested with the power to revoke passports due to fraud. *22 CFR 51.62*. The decision on the revocation is final. *22 CFR 51.74*. In a case of actual controversy within its jurisdiction and upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. *5 USC 704*. Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone

5

the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

Here, Plaintiff's passport was revoked by the Defendants as a final act. Said act has no explicit language that requires appeal before seeking a reviewing court nor is there a right to proceed before a superior agency. Since these initial decisions become final agency decisions in the absence of an agency appeal, *see 5 U. S. C. § 557(b),* agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be "inoperative" pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review. It matters not that a Plaintiff may seek review by the same agency. The option does not create an obligation. Requiring litigants "to exhaust optional appeals as well" would "be inconsistent with the plain language of" the statute. *Ghafoori v. Napolitano*, 713 F. Supp. 2d 871 (2010). (See at 147, 113 S.Ct. 2539). Where the APA applies, an appeal to "superior agency authority" is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review. Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final" under § 10(c). *Darby v. Cisneros*, 509 US 137 (1993). It is clear that Plaintiff needed not to "testify, offer evidence in his own behalf, present witnesses, and make arguments" at an administrative hearing before the agency". Plaintiff was separated from his family. Plaintiff was here in the relative safety of the United States. Distance, war, and Defendants' anti-Yemeni policy left Plaintiff's family in war-torn Yemen. Time was of the essence. Defendants seems to concede that Plaintiff had no exhaustion obligations. *ECF Dkt. No. 68 at Footnote#3*. Yet, Defendants argue that this Court

6

should rule that he cannot now raise the issue of Due Process, this position would effectively and impermissibly create an exhaustion rule.  Moreover, as Plaintiff previously argued (ECF Dkt. No. 62) it is now unfair for the Defendants to conveniently state that Plaintiff was given an opportunity to present constitutional challenges to his passport revocation at the administrative hearing process where previous assertions of the Defendants state that Administrative hearings are limited to determining if the Department acted properly in revoking the passport, and that the Hearing Officer does not make determinations regarding due process. *Id*.  Administrative hearings are an improper venue to make arguments that are outside the scope of the hearing, and that the hearing should solely be limited to if the Department acted properly in revoking Plaintiff's passport. This begs an absurd result. In effect Defendants argue although we will not rule on constitutional issues you must still create a record before us while your family is at risk of losing life or limb.

III.    **Summary Judgment standards do not demand that Plaintiff to 'bolster" his due process claims by pointing to allegations that the State Department applies an "anti-Yemeni" standard.**

When reviewing an agency action under the APA, the Court's review is limited to the administrative record on which the agency based its decision. See 5 U.S.C. § 706; *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009). Relevant here, Section 706 instructs that: "[t]he reviewing court shall: . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). To determine whether an agency's decision was arbitrary and capricious, district courts must decide whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." I*ndiana Forest Alliance, Inc. v. U.S. Forest Service*, 325 F.3d 851, 859 (7th Cir. 2003) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm*

*Mut. Auto Ins. Co*., 463 U.S. 29, 43 (1983)). Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332, 96 S.Ct. 893. See also *MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1151 (9th Cir.2008). "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" *Mathews,* 424 U.S. at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). See also *Villa-Anguiano v. Holder*, 727 F.3d 873, 881 (9th Cir.2013). Due process, however, "`is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews*, 424 U.S. at 334, 96 S.Ct. 893 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). See also *Wynar v. Douglas Cnty. School Dist*., 728 F.3d 1062, 1073 (9th Cir.2013).

Here, it is clear that Plaintiff needs not "bolster" his due process claims by pointing to allegations that the State Department applies an "anti-Yemeni" standard for summary judgment purposes as the defendants suggest. Instead, Plaintiff must point to an agency rule that is arbitrary and capricious. This may be achieved by showing that the agency has relied on factors which Congress has not intended it to consider *Id*. The Defendant asks this Court to ignore the mountains of public record supporting Plaintiff's allegations that it promulgates an anti-Yemeni

standard. However, this Court had the authority to take judicial notice of matters such as these. A Court may take judicial notice of publicly available records of court proceedings, see *Scherr v. Marriott Int'l, Inc*., 703 F.3d 1069, 1073 (7th Cir.2013); *United States v. Hope*, 906 F.2d 254, 260 n. 1 (7th Cir.1990), including even records unavailable or not presented to the district court at summary judgment, see *Northfield Ins. Co. v. City of Waukegan,* 701 F.3d 1124, 1128 n. 2 (7th Cir.2012); *Driebel v. City of Milwaukee*, 298 F.3d 622, 630 n. 2 (7th Cir.2002). A Court may take judicial notice of news articles and judicial opinions *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012). The public record reveals an anti-Yemeni intent on the part of the defendants in violation of Plaintiff's due process rights. Defendants could not reasonably argue that Congress intended to discriminate against American citizens on the basis of their origin as it is Congress who has substantial authority to regulate the grounds on which passports may be approved or denied, see *Zivotofsky ex rel. Zivotofsky v. Kerry,* 135 S. Ct. 2076, 2096 (2015).

IV.     **Plaintiff passport revocation was incorrect as a matter of law because he overcame his burden of establishing his identity when he applied for a passport using his unrefuted legal name that appears on his certificate of citizenship.**

An individual applying for a U.S. passport must provide evidence of citizenship and identity. See 22 C.F.R. §§ 51.23, 51.40. 19 18. The Department's regulations specify that proof of identity includes "the submission of a previous passport, other state, local, or federal government officially issued identification with photograph, or other identifying evidence which may include an affidavit of an identifying witness." See 22 C.F.R. § 51.23(b ). If the applicant satisfies these conditions, then a U.S. passport "shall be issued in the full name of the applicant, generally the name recorded in the evidence of nationality and identity." See 22 C.F.R. § 51.25(a).

Plaintiff makes no claim that fraudulently obtaining a certificate of citizenship transmutes the false name on that certificate into his "true legal name and identity" as Defendants assert. This conclusion assumes that Plaintiff used a false name on his certificate of citizenship. This is a material fact in dispute that must be resolved by a trial. Plaintiff's true name is Qarwash Mohsn Awad which is "...the name recorded in the evidence of nationality and identity". *Id.* As stated before, Plaintiff was the undisputed holder of the certificate of citizenship, he met the identity requirements thereof and the privileges of a United States citizen now being undermined by the defendants' illegal policies. Once issued, the name on the Certificate of Citizenship, unless changed by subsequent court order or in accordance with state law, stands as the citizen's legal name and identity for official government purposes. For this reason, the State Department requires passport applicants to "explain any material discrepancies between the name on the application and the name recorded in the evidence of nationality and identity." 22 C.F.R. § 51.25(b). The actual issuance of Plaintiff's passport demonstrated that Plaintiff satisfied his burden of establishing his identity. The only evidence presented in this case to support the revocation of Plaintiff's passport is a statement taken under duress from Plaintiff's sister in connection with a visa petition which had been filed on her behalf by Plaintiff's father. It has now come to light that this statement makes absolutely no mention of the Plaintiff. There is no other evidence to support the claim that Plaintiff used another identity. There is, on the other hand, evidence that Special Agent David W. Howell has been involved in other cases in which U.S. citizens of Yemeni extraction have wrongly been denied passports. According to news reports, officials have publicly stated that immigration fraud is widespread in Yemen, and that the Embassy in Sana'a considered all immigrant visa cases "fraudulent until proven otherwise".

**CONCLUSION**

WHEREFORE, the Court should deny summary judgment for Defendants, and grant Plaintiff's

Preliminary Injunction, damages and costs.


Filed: September 12, 2016


<div style="margin-left:40%">

Respectfully Submitted,

/S/June J. Htun
June J. Htun, Esquire
Attorney for Petitioner,
3236 North Elston Avenue, Suite G
Chicago, Illinois 60618
P: 773-362-5000
F: 773-362-5005
jjhtun@gmail.com

</div>