UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QARWASH MOHSN AWAD, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 6146 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JOHN KERRY, MICHELE T. BOND, PATRICK F. KENNEDY, U.S. DEPARTMENT OF STATE, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, Qarwash Mohsn Awad challenges the State Department's revocation of his United States passport. Now before the court are the parties' cross-motions for summary judgment. Docs. 23, 38. Defendants' motion is denied, and Awad's motion is granted.

**Background**

The facts are drawn from the administrative record. Doc. 27; *see Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) ("As a general rule, under the APA, review of an agency's decision is confined to the administrative record to determine whether, based on the information presented to the administrative agency, the agency's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."); *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir. 1990) ("Confining the district court to the record compiled by the administrative agency rests on practical considerations that deserve respect."). The relevant background also includes facts on which the parties agree and, because summary judgment is granted against Defendants, facts asserted by Defendants. Finally, while the court denied Awad's motion to expand the administrative record, Doc. 63, that ruling merits no further

1

discussion because Awad prevails on the administrative record without regard to the supplemental materials that he submitted.

Awad was born in Yemen on October 25, 1984. Doc. 27 at 14; Doc. 39 at ¶ 4. He was admitted to the United States as a permanent resident on October 2, 2000, as the child of a United States citizen, his father. Doc. 39 at ¶ 10. Awad later was issued a judicial certificate of citizenship in the name "Qarwash Mohsn Awad." Doc. 17 at ¶ 5. He applied for a United States passport in the name "Qarwash Mohsn Awad" in 2002, and applied for and received a renewed passport in 2011 under the same name. Doc. 27 at 6, 14-15. In the box labeled "OTHER NAMES YOU HAVE USED," Awad responded "NON" in his 2002 application and "Saleh" in his 2011 application. *Id*. at 4, 14.

In 2006, Awad's father filed a visa petition on behalf of Awad's sister, whose first name is Zuhour. Doc. 39 at ¶ 12. On September 8, 2012, Zuhour met with Diplomatic Security Special Agent David Howell at the United States Embassy in Sana'a, Yemen. *Id*. at ¶ 14. The meeting yielded a sworn statement by Zuhour, signed by Zuhour and Howell. Doc. 27 at 7-8. The statement reads, in pertinent part:

> My true and correct name is Zuhour Attaf Saleh KURWASH. … My father, Attaf Saleh KURWASH, immigrated to the United States under the assumed name Mohsen Saleh AWAD. My father filed an immigrant visa petition on my behalf under the fake/assumed name Zuhour Mohsen Saleh AWADH. I obtained a Yemen passport … under the fake/assumed name Zuhour Mohsen Saleh AWADH, in support of my petition. I lied to the Consular Officer during my visa interview, claiming that my true name was Zuhour Mohsen Saleh AWADH.

*Id*. at 7. The statement does not name or otherwise refer to Awad.

Based on Zuhour's statement, the State Department initiated a passport fraud investigation of Awad's father; the case title is "AWAD, Mohsen Saleh." *Id*. at 9. The investigation resulted in an IMS Report of Investigation, dated February 24, 2013, which focused

2

primarily on Awad's father's immigration history and Zuhour's statement to Howell. *Id*. at 9-13.

The Report referenced Awad in the following paragraphs:

> A search in CCD/IVIS [(Consular Consolidated Database/Immigrant Visa Information System)] Case by Petitioner reveals that Subject [Awad's father] filed Immigrant Visa petitions for Bakil Mohsen AWAD [another of Awad's siblings] and Qarwash Mohsen AWAD [Plaintiff] … in 1996. … Subject filed all of the petitions under his fraudulent identity and used fraudulent identities for his children in order to conform to Arabic naming conventions.
>
> …
>
> Qarwash Attaf Saleh KARWASH aka Qarwash Mohsen AWAD [Plaintiff] … entered the United States on 10/02/2000 as the child of a U.S. citizen …. Qarwash naturalized as a U.S. citizen on 02/07/2002. On 05/27/2011, Qarwash submitted a U.S. Passport Renewal Application (DS-82) at the Chicago Passport Agency and subsequently received [a U.S. passport and passport card] under his false name of Qarwash Mohsn Awad …. A search … shows that Qarwash filed Immigrant Visa petitions for [his wife and two children]. Qarwash's petitions for his children were filed under his fake identity.

*Id*. at 10-11.

The administrative record contains two internal State Department communications. The first, an email sent on January 16, 2015, states: "Please see the attached revocation request for … Qarwash Awad. His father's passport was revoked earlier this week using the same evidence." *Id*. at 3. The second, a Memorandum dated January 20, 2015, reads:

> DS/CFO reported that passport book … and card … issued on 05/31/2011, to Qarwash Mohsn Awad were IIE. [Awad's] sister confessed that [Awad's] father naturalized using a false identity, then used false identities to obtain visas for his children, including [Awad]. [Awad's] true identity is Qarwash Attaf Saleh Karwash. We are requesting [Awad's passport book and card] be hereby revoked.

*Id*. at 2.

A letter from the State Department, dated May 11, 2015, notified Awad that his passport was revoked. *Id*. at 15-16. The letter states: "This action is taken in accordance with the provisions of Section 51.62(a)(2) of Title 22 of the U.S. Code of Federal Regulations, which

3

provide that a U.S. passport may be revoked when it has been determined that the passport was obtained illegally, fraudulently or erroneously." *Id*. at 15. The letter sets forth this explanation of the agency's decision:

> An investigation by the Department revealed that your true identity is not Qarwash Mohsn Awad. On September 8, 2012, your sister, Zuhor Qarwash Attaf Saleh Kurwash, provided a written, sworn statement that your true identity is Qarwash Attaf Saleh Kurwash. Using the false name Mohsen Saleh Awad, your father, Attaf Saleh Kurwash, filed an immigrant visa petition on your behalf in 1996 using your false identity Qarwash Mohsn Awad. Because you made a false statement of material fact in your passport application, your passport is revoked pursuant to Section 51.62(a)(2) of Title 22 of the U.S. Code of Federal Regulations.

*Ibid*. The letter advised Awad of his right to a hearing under 22 C.F.R. §§ 51.70-74, and that the "hearing would address only the evidence presented upon which your passports were revoked." *Id*. at 16. Awad did not request a hearing. Doc. 39 at ¶ 22.

## Discussion

The APA provides for judicial review of final agency decisions. *See* 5 U.S.C. §§ 702, 706; *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."). Awad challenges the revocation of his passport on several grounds, but only one requires discussion—that the revocation was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A) (authorizing the court to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

The "arbitrary and capricious" standard requires the court to determine whether the agency "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a

4

difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Under this highly deferential standard, an administrative decision should be upheld as long as the agency's path may be reasonably discerned." *Sierra Club v. U.S. EPA*, 774 F.3d 383, 393 (7th Cir. 2014) (internal quotation marks omitted).

That said, "[t]o survive arbitrary and capricious review, an agency action must be the product of reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 74-75 (D.C. Cir. 2012); *see also id*. at 75 (in a case reviewing a State Department action explained in a letter from the Bureau of Consular Affairs, noting that "[t]he requirement of reasoned decisionmaking indisputably applies in situations involving judicial review of agency adjudicatory actions"). In other words, "the agency must … articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation marks omitted). Put yet another way, a court "cannot uphold an administrative decision that … because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). Moreover, under the *Chenery* doctrine, *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), "[t]he reviewing court should not attempt itself to make up for … deficiencies" in the agency's reasoning and "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *see also Michigan v. U.S. EPA*, 135 S. Ct. 2699, 2710 (2015) (noting "the foundational principle of administrative law

that a court may uphold agency action only on the grounds that the agency invoked when it took the action"); *Lara v. Lynch*, 789 F.3d 800, 806 (7th Cir. 2015).

The State Department "may revoke … a passport when … [t]he passport has been obtained illegally, fraudulently or erroneously; [or] was created through illegality or fraud practiced upon the Department." 22 C.F.R. § 51.62(a)(2). Defendants contend that revocation is permitted here because Awad made false statements of material fact in his passport applications. Doc. 25 at 5. Defendants' brief specifies three false statements:

> Plaintiff made false statements of material fact in his 2011 passport application because (1) his true identity is Qarwash Attaf Saleh Kurwash, not "Qarwash Mohsn Awad," as he listed; (2) his father's true name is Attaf Saleh Kurwash, not "Mohsn Saleh" (as Plaintiff listed in [his] 2011 passport renewal application) or "Mohsen Saleh Awad" (as he listed in his 2002 passport application); and (3) he left blank the section asking him to "List all other names you have used."

*Ibid*.

The second ground is a non-starter. Nowhere in the administrative record does the State Department say or even remotely suggest that it based its revocation decision on Awad's providing a false name for his *father*. Rather, the record shows that the State Department's only basis for revoking Awad's passport was that he (supposedly) provided a false name for *himself*. Doc. 27 at 2, 11, 15. The *Chenery* doctrine prohibits Defendants from justifying the revocation on grounds not articulated by the State Department when it made its decision. *See Michigan v. U.S. EPA*, 135 S. Ct. at 2710; *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ("The courts may not accept … counsel's post hoc rationalizations for agency action."); *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (criticizing another federal agency for its persistent violations of the *Chenery* doctrine).

That leaves the first and third grounds, which concern Awad's alleged misrepresentations of his own name. In their initial brief, Defendants contended that "[t]he evidence upon which the

6

State Department based its revocation decision was Plaintiff's sister's written, sworn statement from September 8, 2012." Doc. 25 at 5. As Defendants' reply brief concedes, that contention is baseless. Doc. 68 at 2 n.2. Awad's sister's statement referred to the false names of only two people: herself, and her (and Award's) father. Doc. 27 at 7-8. The sister's statement does not refer to Awad at all, let alone suggest that the name he used is false in any way.

The agency's erroneous reliance on Awad's sister's statement to support its determination that Awad used a false name on his passport application appears elsewhere in the record. In the internal January 16, 2015 email, a State Department official makes a request to revoke Awad's passport. *Id*. at 3. The only justification for the request was that Awad's "father's passport was revoked earlier this week using the same evidence." *Ibid*. An internal memorandum issued four days later makes clear that this "same evidence" was Awad's sister's statement to Howell: "[Awad's] sister confessed that [Awad's] father naturalized using a false identity, then used false identities to obtain visas for his children, including [Awad]." *Id*. at 2. As noted, however, Awad's sister did not "confess[] that [Awad's] father … used false identities to obtain visas for his children, including [Awad]"; rather, she referred only to her and her father's identities, and did not mention Awad at all.

The State Department's May 11, 2015 letter informing Awad that his passport was revoked—which articulates the agency's final decision, *see Fox*, 684 F.3d at 69—repeats the same error. The letter states, in relevant part: "On September 8, 2012, your sister, Zuhor Qarwash Attaf Saleh Kurwash, provided a written, sworn statement that your true identity is Qarwash Attaf Saleh Kurwash." *Id*. at 15. As shown above, and as Defendants admit, that is wrong. Doc. 68 at 2 n.2. Yet that is the only justification the letter provides for its conclusion that Awad "made a false statement of material fact in [his] passport application." Doc. 27 at 15.

It also bears mention that the letter mistakenly identifies Awad's sister as "Zuhor *Qarwash* Attaf Saleh Kurwash," *ibid*. (emphasis added); as the administrative record shows, there is no "Qarwash" in her name. *Id*. at 7-10, 12. Mistakes like those in the State Department's letter do little to inspire confidence in its decisionmaking process and, in particular, in the accuracy of its determination that Awad used a false name in his passport application.

Defendants' initial brief also argues that the agency "explained its finding of fraud in its thorough report of investigation." Doc. 25 at 5. By its "thorough report of investigation," Defendants mean the IMS Report of Investigation. Doc. 27 at 9-13. The report is titled "AWAD, Mohsen Saleh"—Awad's father. The report describes Awad's father's immigration history and Zuhour's statement to Howell, and it lists the crimes for which Awad's father is "amenable to prosecution." Doc. 27 at 9-10. As noted, Awad then enters the narrative:

> A search in CCD/IVIS [(Consular Consolidated Database/Immigrant Visa Information System)] Case by Petitioner reveals that Subject [Awad's father] filed Immigrant Visa petitions for Bakil Mohsen AWAD [another of Awad's siblings] and Qarwash Mohsen AWAD [Awad] … in 1996. … Subject filed all of the petitions under his fraudulent identity and used fraudulent identities for his children in order to conform to Arabic naming conventions.
>
> …
>
> Qarwash Attaf Saleh KARWASH aka Qarwash Mohsen AWAD [Awad] … entered the United States on 10/02/2000 as the child of a U.S. citizen …. Qarwash naturalized as a U.S. citizen on 02/07/2002. On 05/27/2011, Qarwash submitted a U.S. Passport Renewal Application (DS-82) at the Chicago Passport Agency and subsequently received [a U.S. passport and passport card] under his false name of Qarwash Mohsn Awad …. A search … shows that Qarwash filed Immigrant Visa petitions for [his wife and two children]. Qarwash's petitions for his children were filed under his fake identity.

*Id*. at 10-11. As far as the administrative record reveals, this is the first time that Awad's name was raised in conjunction with any allegation of passport fraud.

The relevant passage begins by stating that a database search revealed that Awad's father filed visa petitions for his children, including Awad. That statement is supported with a citation to the CCD/IVIS database search. Next comes the charge that Awad's father "filed all of the [immigrant visa] petitions under his fraudulent identity *and used fraudulent identities for his children in order to conform to Arabic naming conventions*." *Id*. at 10 (emphasis added). No explanation or support is offered for that charge—that is, the report does not say how or why the agency determined that Awad's father used false names for his children (and not just Zuhour, Awad's sister) on their immigrant visa petitions, let alone that the false names conform to Arabic naming conventions. The report proceeds to say that Awad submitted a passport application "under his false name of Qarwash Mohsn AWAD" as opposed to his true name "Qarwash Attaf Saleh KARWASH." *Id*. at 11. Again, the report provides no explanation or support for its conclusion that Awad used a false name for himself on his passport application—that is, the report does not say how or why the agency determined that Awad's true name is Qarwash Attaf Saleh Karwash as opposed to the name he used.

Seventh Circuit precedent provides that a court "cannot uphold an administrative decision that … because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker*, 597 F.3d at 921. Here, the record contains two potential justifications for the agency's decision. The first—that Awad's sister admitted that Awad's true name is Qarwash Attaf Saleh Kurwash rather than the name he used on his passport application—fails because, as Defendants themselves admit, it is "an explanation … that runs counter to the evidence before the agency." *Nat'l Ass'n of Home Builders*, 551 U.S. at 658. The second—that the agency determined in some other way that Awad's true name is Qarwash Attaf Saleh Kurwash—cannot stand because it is unexplained and unsupported. *See Encino*

9

*Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016) (holding that an agency's "conclusory statements do not suffice to explain its decision"). As the Supreme Court has "frequently reiterated," "an agency must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 48. The State Department has not done so here.

## Conclusion

For the foregoing reasons, Defendants' summary judgment motion is denied, and Awad's summary judgment motion is granted. "If the record before the agency does not support the agency action, … the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co.*, 470 U.S. at 744. Accordingly, the revocation of Awad's passport is set aside, and the matter is remanded to the State Department for additional investigation or explanation. In so holding, the court does not suggest that the State Department could not have properly determined that Awad made false statements in his passport application; the court holds only that the record and the agency's explanations to date do not adequately support its finding that he did so.

September 28, 2016

United States District Judge